**LEEJAY, INC., d/b/a Bed & Bath**

v.

**BED BATH & BEYOND, INC., d/b/a BB & Beyond.**

**Civil Action No. 96–10894–GAO.**

United States District Court,
D. Massachusetts.

July 23, 1996.

Margarat A. Robbins, Frank C. Huntingham, Hutchins, Wheeler & Dittmar, Boston, MA, for Leejay, Inc., dba Bed & Bath.

John Egan, Posternak, Blankstein & Lund, Boston, MA, Charles P. Kennedy, Lerner, David, Littenberg, Krumholz & Mentlik, Westfield, NJ, for Bed Bath & Beyond, Inc.

### MEMORANDUM OF DECISION

O'TOOLE, District Judge.

The plaintiff Leejay, Inc. ("Leejay") has brought this action against the defendant Bed Bath & Beyond, Inc. ("Bed Bath & Beyond"), claiming that Bed Bath & Beyond is infringing its trademark and misleading potential customers into thinking that its re-

cently opened store in Burlington, Massachusetts, is affiliated with Leejay's "Bed & Bath" stores. The complaint asserts claims under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the Massachusetts trademark and unfair competition statutes, Mass. Gen.L. chs. 93A and 110B, and the common law of trademark infringement. Leejay has moved for a preliminary injunction to enjoin Bed Bath & Beyond from using the name "BB & BEYOND: Bed, Bath & Housewares" for its Burlington store. For the reasons set forth below, the motion is denied.

## I.

Since 1971, Leejay has operated retail stores in Massachusetts and other New England states under the name "Bed & Bath." Currently, there are thirty-six "Bed & Bath" stores in New England. The stores principally sell "domestics merchandise," such as sheets, towels, blankets, comforters, pillows, table linens, curtains and drapes, and bathroom accessories. Complaint ¶ 1. Leejay employs a mark having a distinctive presentation of the words "BED & BATH" in blue rounded block letters. In 1980, Leejay registered its "Bed & Bath" trademark in Massachusetts, New Hampshire, Rhode Island, and subsequently in Vermont. Rogers Aff. ¶ 11.[1] In addition to obtaining these state registrations, Leejay has attempted to defend against use by competitors of marks confusingly similar to its "Bed & Bath" mark. Id. ¶ 12.

For many years as well, the defendant Bed Bath & Beyond has operated retail stores that sell a similar range of domestics merchandise throughout the United States. The stores operated under the name "bed n bath." In 1985, Bed Bath & Beyond adopted a "superstore" format, offering a wider range of domestics merchandise, furnishings and housewares in addition to bed and bath items. Consistent with the new format and expanded offerings, in 1987 the defendant changed its store names to BED BATH & BEYOND. It subsequently obtained four service mark registrations with the United States Patent and Trademark Office covering variations of its BED BATH & BEYOND mark. Eisenberg Decl. ¶ 3, Ex. I. Presently, Bed Bath & Beyond operates eighty-six stores in twenty-two different states. Until 1994, it had no store in Massachusetts.

In November 1994, Bed Bath & Beyond opened a store in Worcester, Massachusetts. To avoid any potential dispute with Leejay, Bed Bath & Beyond decided to use the store name "BB & BEYOND." However, its shopping bags, shopping carts and hand baskets also bore the phrase "A Bed Bath & Beyond Store." Complaint ¶ 21. Leejay objected to the use of the words "Bed Bath & Beyond" on the ground of their similarity to Leejay's "Bed & Bath" mark. After negotiations, Bed Bath & Beyond decided "that the matter [was] simply not worth litigating" and agreed to discontinue all uses of the phrase "Bed Bath & Beyond" in its Worcester store. Eisenberg Decl., Ex. L. Bed Bath & Beyond further agreed not to use the name BED BATH & BEYOND in juxtaposition with the store name BB & BEYOND. Id., Ex. M.

In April 1996, Bed Bath & Beyond opened a store in Burlington, Massachusetts. The store's exterior features a large sign in bold red capital letters with the store title "BB & BEYOND." A smaller sign, located immediately below the storefront sign, reads "Bed Bath & Housewares." Doherty Decl., Ex. D. Leejay complained to Bed Bath & Beyond about the use of the words "Bed" and "Bath" below the words "BB & Beyond" on the exterior sign of the Burlington store. Eisenberg Decl., Ex. P. Leejay asserts that such use of the words "bed" and "bath" invites potential customers to read "BB & Beyond" as simply an abbreviation for "Bed Bath & Beyond" and inevitably leads to confusion damaging to Leejay's business goodwill.

## II.

A party seeking a preliminary injunction must establish that its claims are likely to succeed on the merits; that the movant will suffer irreparable harm if the injunction is not granted; that the movant's injury out-

---

1. The mark over which Leejay asserts exclusive rights—"Bed & Bath"—is not federally registered. Leejay's federal claim, therefore, is based upon section 43(a) of the Lanham Act, pertaining to unregistered trademarks. 15 U.S.C. § 1125(a).

weighs any injury the nonmovant would suffer as a result of the injunction; and that the public interest would not be adversely affected by the granting of an injunction. *Keds Corp. v. Renee Int'l Trading Corp.,* 888 F.2d 215, 220 (1st Cir.1989); *Planned Parenthood League of Mass. v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981). "In a trademark case, the key issue is the likelihood of success on the merits because the other decisions will flow from that ruling." *Keds Corp.,* 888 F.2d at 220; *see also Trak, Inc. v. Benner Ski KG,* 475 F.Supp. 1076, 1078 (D.Mass.1979).

In order to demonstrate a likelihood of success on the merits, Leejay must establish that it owns a mark entitled to protection, and that Bed Bath & Beyond has used or appropriated its trademark in a manner likely to cause consumer confusion.[2] *See Boston Beer Co. v. Slesar Bros. Brewing Co.,* 9 F.3d 175, 180 (1st Cir.1993); *Tanel v. Reebok Int'l, Ltd.,* 774 F.Supp. 49, 51–56 (D.Mass.1990).

■ Whether a particular term is entitled to trademark protection depends on the classification of that term along the spectrum of "distinctiveness." *Boston Beer,* 9 F.3d at 180. In ascending order of eligibility for protection, marks can be categorized as generic, as descriptive, or as suggestive, arbitrary or fanciful. *Id.* at 180. Terms classified as generic "have passed into common usage to identify a product, . . . and can never be protected." *Id.* A descriptive mark conveys an immediate idea of the ingredients, qualities, or characteristics of the article or service to which it refers. *Id.; see also Calamari Fisheries, Inc. v. The Village Catch, Inc.,* 698 F.Supp. 994, 1006–07 (D.Mass.1988). Descriptive marks are entitled to protection only upon a showing that they have acquired "secondary meaning." *See Boston Beer,* 9 F.3d at 180; *Calamari Fisheries,* 698 F.Supp. at 1007.

The defendant's submissions reveal that "bed and bath" is a phrase commonly used to refer to a particular category of items generally sold together either in a separate specialty store or in a specific section of a department store (often denominated the "bed and bath department"). *See* Chhugani Decl., Ex. U. Bed Bath & Beyond has submitted a number of examples of retail stores' advertisements where the phrase "bed and bath" or "bed & bath" is used to refer to bedroom and bathroom items. *See* Eisenberg Decl. ¶ 9, Ex. K1–14. For instance, a January 31, 1996 *Boston Globe* advertisement for Filene's features a headline which announces a discount of "20%–50% OFF ENTIRE STOCK OF BED & BATH." *Id.,* Ex. K6. Similarly, a March 19, 1995, Jordan Marsh advertisement announces a discount of "25%–50% off/Everything for bed & bath." *Id.,* Ex. K7. The Jordan Marsh ad lists a series of articles which fall within the "bed & bath" category: towels, sheets, comforters, pillows—not coincidentally, the same items sold in Leejay's "Bed & Bath" stores. It is quite clear that the phrase "bed and bath" is widely used to identify a category of bedroom and bathroom items carried by retail stores.

There is some question whether the phrase is more properly characterized as a "generic" or a "descriptive" term. Bed Bath & Beyond has made a strong argument that it amounts to a generic term for a class of retail merchandise, much like "hardware." *See* Chhugani Decl., Ex.U. If it is a generic phrase, it is not entitled to trademark protection. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 661–62, 83 L.Ed.2d 582 (1985).

■ Bed Bath & Beyond says that Leejay's unsuccessful attempts to obtain federal registration of its mark in the past indicate that it is unprotectable. *See* Kennedy Decl. ¶ 2. An abandoned trademark application, however, does not warrant the negative inference suggested by Bed Bath & Beyond. *See Volkswagenwerk Aktiengesellschaft v. Wheeler,* 814 F.2d 812, 816 (1st Cir.1987); *Keebler Co. v. Rovira Biscuit Corp.,* 624 F.2d 366, 372 (1st Cir.1980). Nonetheless, Leejay's federal claim is based upon § 43(a) of the Lanham Act, pertaining to unregistered trademarks. 15 U.S.C. § 1125(a). The general principles qualifying a mark for

---

2. The discussion in the text is focused on the Lanham Act claim. Because trademark infringement is defined in essentially the same terms under the Lanham Act and under Massachusetts law, Leejay's likelihood of success on the merits of any of the state claims will not be different enough to merit separate discussion.

registration under § 2 of the Lanham Act are applicable in determining whether an unregistered mark is entitled to protection under § 43(a). *See Boston Beer,* 9 F.3d at 180. So it is appropriate to consider whether the mark would qualify for registration.

Leejay uses the common phrase "bed & bath" in a distinctive logo. It is not the entire stylized presentation that is at issue here, however, because Bed Bath & Beyond does not mimic or copy the stylized logo. Rather, Leejay asserts that the defendant infringes by using the words "bed" and "bath" themselves in its store names and paraphernalia.

■ If they are just a generic term for a class of goods, the words themselves are not entitled to trademark protection. *See In re K–T Zoe Furniture, Inc.,* 16 F.3d 390 (Fed. Cir.1994). In that case, K–T Zoe, a manufacturer and seller of custom upholstered furniture, applied for registration of a service mark consisting of the stylized presentation of the words "the sofa & chair company." The Federal Circuit held that applicant had been properly required to limit the claim to the stylized presentation and to disclaim the phrase "the sofa & chair company" itself. The court noted that "a distinctive configuration of words does not of itself impart registrability to the words standing alone." *Id.,* at 394.[3]

Even if the words are classified as descriptive rather than generic, Leejay is entitled to trademark protection for them only upon a showing that they have acquired a "secondary meaning" beyond the "primary meaning" they have as words in the English language. "[A] name has achieved secondary meaning when 'a significant quantity of the consuming public understand the name as referring exclusively to the appropriate party.'" *Boston Beer,* 9 F.3d at 181 (quoting *President & Trustees of Colby College v. Colby College–N.H.,* 508 F.2d 804, 807 (1st Cir.1975)). "Secondary meaning refers to a word's, or a sign's, ability to tell the public that the word or sign serves a special trademark function, namely, that it denotes a product or service that comes from a particular source." *Id.*

(citing *DeCosta v. Viacom, Int'l, Inc.,* 981 F.2d 602, 606 (1st Cir.1992), *cert. denied,* 509 U.S. 923, 113 S.Ct. 3039, 125 L.Ed.2d 725 (1993)).

"Proof of secondary meaning entails vigorous evidentiary requirements." *Boston Beer,* 9 F.3d at 181 (citing *Perini Corp. v. Perini Constr.,* 915 F.2d 121, 125 (4th Cir.1990)). For example, even if Leejay proves that a substantial portion of the consuming public associates the words "Bed & Bath" specifically with Leejay's business, secondary meaning will still not attach if "despite a degree of association between the mark and the producer, the original meaning remains dominant; so long as the mark remains descriptive in its primary significance, subsidiary connotations cannot justify trademark treatment." *Boston Beer,* 9 F.3d at 182 (citing R. Callman, *Unfair Competition, Trademarks, and Monopolies,* § 19.26 at 144 (4th ed. 1989)).

Leejay has not made a sufficient showing that the words "bed and bath" themselves, apart from their stylized presentation in the Leejay logo, have secondary meaning. *See K–T Zoe,* 16 F.3d at 394. Rather, it appears much more likely that any secondary meaning is associated with the mark as an integrated whole, that is, the words in their stylized presentation. That is not enough to justify the relief Leejay seeks; there is no claim that the defendant is infringing the stylized presentation as a whole.

Because Leejay is unlikely to establish that the words "bed & bath" can be protected, there is no need to consider whether Leejay has a likelihood of proving consumer confusion. Having failed to show a likelihood of success on the merits of its claims, Leejay has not made the case for injunctive relief.

### Conclusion

For the foregoing reasons, Leejay's motion for a preliminary injunction is DENIED.

IT IS SO ORDERED.

---

**3.** Interestingly, Bed Bath & Beyond itself had a similar experience when it was required by the Patent and Trademark Office to disclaim the exclusive right to use "BED BATH" in order to register one of its service marks. *See* Eisenberg Decl., Ex. I.