THE KYJEN COMPANY, INC., Plaintiff,

v.

VO–TOYS, INC. Defendant.

No. SACV001115GLT(ANX).

United States District Court, C.D. California, Southern Division.

July 29, 2002.

Craig S. Summers, Paul A. Stewart, Knobbe, Martens, Olson & Bear, LLP, Irvine, for Plaintiff the Kyjen Company, Inc.

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

TAYLOR, District Judge.

Plaintiff's Motion for Summary Judgment is GRANTED.

## I. *BACKGROUND*

Plaintiff Kyjen is a Huntington Beach, California, designer, manufacturer, and distributor of stuffed animals and plush toys, which are marketed mostly as pet toys. Kyjen claims Ms. Hansen, Kyjen's founder, Secretary, and Treasurer, is the principal designer of the toys. The toys at issue in this Motion are Stanley the Stingray, Oakley the Octopus, Wilbur the Bungee Wiener Dog, Plush Puppy Bungee Rabbit, Plush Puppy Bungee Duck, Plush Puppy Bungee Ball Tug, Tug 'N Ring Dragon, and Jingle Ball.[1] Kyjen obtained copyright registrations for these eight toys. Kyjen markets and advertises the dog, rabbit, duck, and ball tug as its Bungee Series because they all have elongated, stretchable bodies or tails, and Kyjen obtained a trademark for its term "bungee."

Defendant Vo–Toys also creates, manufactures, and markets plush pet toys, including a stingray, octopus, dog, rabbit, duck, ball tug, alligator,[2] and ball. Kyjen claims these toys infringe the copyrights of their respective toys because they are so similarly designed that even the number of decorative stitches are identical. Vo–Toys

---

1. Plaintiff's Complaint for copyright and trademark infringement brings claims concerning eleven toys, but only eight of the eleven toys are at issue in this Motion.

2. Kyjen alleges this toy, which Vo–Toys named an alligator, infringes on its copyrighted dragon toy design.

contends Kyjen's copyrights are invalid. Vo–Toys asserts Ms. Hansen was not the original author of the toys because Mr. Cao, who Kyjen describes as Ms. Hansen's translator for the Chinese manufacturer, and the factory workers in China (the manufacturer) contributed significantly to the product design. Vo–Toys claims Ms. Hansen could not copyright the designs because they were not her own work.

Kyjen claims trademark infringement concerning the use of the term bungee. Kyjen has a trademark for the term bungee. Vo–Toys describes its alleged infringing toys as "bungees" on their toy tags. Vo–Toys contends the term bungee is used throughout the pet product industry to refer to stretchable, elastic pet toys. Vo–Toys also claims the public does not associate the term bungee with Kyjen products so its use of the term is not confusing. Plaintiff brings this Motion for Partial Summary Judgment of copyright and trademark infringement claims concerning these eight toys.

## II. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment is proper if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party in a summary judgment motion bears the initial burden of proving the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party makes this initial showing, the burden shifts to the nonmoving party to "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (citation omitted). In other words, the non-moving party must produce evidence that could cause reasonable jurors to disagree as to whether the facts claimed by the moving party are true. The non-moving party is not entitled to rely on the allegations of his complaint; rather he "must produce at least some 'significant probative evidence tending to support the complaint.'" *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

In making a summary judgment determination, the Court must view the evidence presented in the light most favorable to the non-moving party, drawing "all justifiable inferences...in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. If the non-moving party fails to present a genuine issue of material fact, the Court must grant summary judgment. *Celotex*, 477 U.S. at 323–24, 106 S.Ct. 2548. If, however, the evidence of a genuine issue of material fact is "merely colorable" or of insignificant probative value, summary judgment is appropriate. *See Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

### B. *Copyright Infringement*

■ To establish copyright infringement, plaintiff must show a valid copyright and copying by defendant. *See Feist Publ'n v. Rural Tele. Serv. Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). Vo–Toys claims Kyjen's copyrights are invalid because of improper authorship,[3] so Plaintiff cannot establish copyright infringement. Kyjen maintains

---

**3.** Although Hansen is the alleged author of the designs, Kyjen owns the copyrights.

its copyrights are valid, and Vo–Toys copied these copyrighted works.

An author provides more than direction or ideas by translating her idea into a fixed, tangible expression. *See S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1086–87 (9th Cir.1989). An author exercises "artistic control" over the work and acts as the inventor or "master mind." *Aalmuhammed v. Lee*, 202 F.3d 1227, 1233 (9th Cir.2000). However, the creator of a work at another's direction, without contributing intellectual modification, is not an author. *See Lakedreams v. Taylor*, 932 F.2d 1103, 1108 (5th Cir.1991) (finding an artist who copies a paper drawing to a silkscreen work is not an author, and explaining authors have copyright protection even if they do not actually put the material into the form distributed to the public). A court may find individuals are coauthors if they made objective expressions of a shared intent to be coauthors. *See Aalmuhammed*, 202 F.3d at 1234.

Kyjen contends its copyrights are valid because Hansen is the author of the works. Kyjen explains Hansen's instructions to Cao, the Chinese manufacturer, and Mr. McCarthy, its computer-savvy agent, reflect her creative control, and neither Cao or McCarthy exercised the required creative control over the toy design to be considered an author. Kyjen describes Mr. Cao and Mr. McCarthy as translators, who strictly followed Hansen's instructions. Kyjen also claims Vo–Toys provides no evidence to suggest Cao, McCarthy, or the manufacture had the objective intent of coauthors.

Vo–Toys claims Hansen only contributed general ideas to the copyrighted designs.

Vo–Toys suggests Cao, McCarthy, and the manufacturer, as independent artists not employed by Kyjen,[4] contributed to Kyjen's works as authors. Vo–Toys also states genuine issues of fact exist concerning Hansen's authorship. *See Del Madera Prop. v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 980 (9th Cir.1987) (noting whether a person is the author for copyright protection purposes is a question of fact).

1. *Cao's Involvement in the Creation of Kyjen Designs*

The parties do not dispute Hansen reviewed her sketches with Mr. Cao, and orally explained what certain marks represented and how the product should look. *Cf. Nadel & Sons Toy Corp. v. William Shaland*, 16 U.S.P.Q.2d 1113 (2d Cir.1989) (finding company was not author where individual only provided agent for manufacturer with the type of animal it wanted the manufacturer to design without providing a sketch, any instruction, or deciding any of the original design features, and individual was an independent artist who determined all the works' features). Cao communicated Hansen's explanations and instructions to the manufacturer in China. After Hansen reviewed the first prototype, she often explained necessary changes to Cao, who then passed her instructions to the manufacturer. This revision process was repeated with several products until they met Hansen's expectations. Cao declared he did not participate in designing the toy patterns or exercise any creative control over the designs. Vo–Toys provides no evidence suggesting Cao had creative control or contributed to the toy designs.[5] The toys generally reflect Hansen's original sketches.[6] Cao disclaims

---

4. The parties agree Cao, McCarthy, and the manufacturer were not Kyjen employees.

5. Both parties should have obtained all necessary evidence by discovery, which ended on October 15, 2001.

6. Of the sketches provided, Hansen's sketches and the works at issue are similar. Defendant has provided no evidence to contradict Hansen and Cao's assertions changes between the sketches and finished product were directed orally by Hansen to Cao in order to

any authorship of Kyjen toys. The undisputed evidence shows Cao acted as a translator of Hansen's design to the Chinese manufacturer, and Cao was not an author or coauthor of Kyjen toys.

### 2. *McCarthy's Involvement in the Creation of Kyjen Designs*

■ McCarthy, who translated Hansen's sketches into computerized copies to help reduce miscommunications between Hansen and the manufacturers, was not an author or coauthor of Kyjen toys. McCarthy's computerized copies were based on Hansen's drawings. Hansen supervised McCarthy's computer input to ensure he followed her design and created a picture best reflecting what her sketch represented. There is no evidence suggesting McCarthy exercised any creative control or discretion or had any intent to be a coauthor.

### 3. *The Manufacturer's Involvement in the Creation of Kyjen Designs*

Defendant's contention the Chinese manufacturer is the author of Kyjen toys is unsupported. Defendant provides no evidence to suggest the manufacturer had any creative control or discretion. Cao declared the manufacturer was told to strictly follow Hansen's instructions. Cao and Hansen declared that, if the manufacturer deviated from Hansen's instructions, the products were returned to the manufacturer to comply with Hansen's design and instructions. Defendant presents no evidence showing the manufacturer exercised any creative control or discretion, or had an objective manifestation of an intent to be a coauthor. The undisputed evidence is the manufacturer is not an author because it did not design the toys or exercise creative control over the toy designs, and it did not have an intent to be an author or coauthor.

correct the original prototypes to match Han-

### 4. *Tug 'N Ring Dragon*

■ Vo–Toys contends Kyjen's dragon toy is not copyrightable because it is a copy of another dragon toy modified by the ring for its body, addition of hands, and removal of feet and tail. Kyjen explains the dragon toy and its changes, which were copyrighted, is copyrightable because Hansen is the copyright holder of the original toy from which she copied this dragon toy's head. *Cf. Russ Berrie & Co. v. Jerry Elsner Co.,* 482 F.Supp. 980, 987 (S.D.N.Y.1980) (finding copyright registration invalid where holder did not advise the copyright office the work copied a different Japanese company's work, which was in the public domain, with de minimus changes). Defendant does not contest Hansen is the copyright holder of the original dragon whose head was copied in this dragon toy. The evidence is uncontradicted Hansen's changes in this dragon toy from her first copyrighted dragon toy warrant copyright protection, and this dragon toy's copyright is valid.

### 5. *Jingle Ball*

Vo–Toys claims Kyjen's jingle ball is not copyrightable due to improper authorship because Hansen declared other plush covered tennis balls with facial expressions would not infringe against her jingle ball. Kyjen does not claim it copyrighted plush covered tennis balls with facial expressions or tufts of fuzz. Kyjen's claim against Vo–Toys concerns its copyright of the jingle ball design—the particular facial expression and bell inside the ball. Vo–Toys' ball is nearly identical to Kyjen's jingle ball. The Court finds no genuine issues of fact exist concerning Hansen's authorship of the jingle ball, that Kyjen's jingle ball copyright is valid, and that Vo–Toys' ball infringes on Kyjen's jingle ball copyright.

sen's desired product.

### 6. Conclusions Concerning Copyright Infringement

■ Kyjen's copyrights are valid for the eight toys at issue. Vo–Toys presents no evidence creating genuine issue of fact concerning Hansen's authorship of copyrighted toy designs. Vo–Toys' toy designs are nearly identical to Kyjen's copyrighted toy designs. Vo–Toys' stingray, octopus, dog, rabbit, duck, ball tug, alligator, and ball infringe on Kyjen's copyrights of Stanley the Stingray, Oakley the Octopus, Wilbur the Bungee Wiener Dog, Plush Puppy Bungee Rabbit, Plush Puppy Bungee Duck, Plush Puppy Bungee Ball Tug, Tug 'N Ring Dragon, and Jingle Ball. Plaintiff's Motion for Summary Judgment concerning copyright infringement is GRANTED.

### C. Trademark Infringement

■ To show trademark infringement, a plaintiff must establish its rights in the trademark, and defendant's trademark is so similar to plaintiff's trademark it is confusing. See Brookfield Communications v. West Coast Entm't Corp., 174 F.3d 1036, 1048 (9th Cir.1999). Plaintiff establishes rights in the trademark by showing the trademark is inherently distinctive, suggestive, or acquired a secondary meaning. See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 769, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (noting a descriptive mark only warrants trademark protection if it has a secondary meaning); Filipino Yellow Pages Inc. v. Asian Journal Publ'n, 198 F.3d 1143, 1146 (9th Cir. 1999) (explaining generic terms are not protected by trademarks, descriptive terms are protected by trademarks only if the term is proved to have a secondary meaning, and suggestive, arbitrary or fanciful terms are protected by trademarks). Kyjen alleges its bungee trademark is inherently distinctive, suggestive, and acquired secondary meaning. Vo–Toys con-

tests these allegations and claims bungee is a generic term in the pet industry.

■ A term is generic if it identifies the object. See Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1391 (9th Cir.1993) (characterizing a product name as generic if it answers the question "what are you?"). If Kyjen's toys are considered bungees, then the term bungee is generic and not a valid trademark. Kyjen's works are plush pet toys. Vo-toys' only support of its contention bungee is a generic term are Hansen's use of the term to describe Kyjen toys and Vo–Toys' violating toys, and Vo–Toys' own use of the term bungee. Kyjen's use of its trademark names to identify its pet toys or discuss alleged infringing toys does not make the trademark bungee a generic term. Kyjen and Hansen's use of the term bungee does not show bungee is a generic term used by the public to describe the product. The term toy or plush pet toy, not bungee, identifies Kyjen's product. Bungee is not a generic term.

■ A trademark is inherently distinctive if it is suggestive or arbitrary. See Two Pesos, 505 U.S. at 769, 112 S.Ct. 2753. A trademark is suggestive because it suggests the type of product being sold without describing it. See id.; see, e.g., Am. Home Prods. Corp v. Johnson Chem., Co., 589 F.2d 103, 106 (2d Cir.1978) (finding "roach motel" was a suggestive mark and explaining a term is suggestive if it requires imagination, thought and perception to reach a conclusion as to the nature of goods, but a term is descriptive if it conveys an immediate idea of the ingredients, qualities, or characteristics of the product); cf. Skinner Mfg. v. Kellogg Sales Co., 143 F.2d 895 (8th Cir.1944) (finding "raisin bran" was a descriptive term, not a suggestive term); Leejay v. Bed Bath & Beyond, Inc., 942 F.Supp. 699 (D.Mass.1996) (finding "bed bath" to be descriptive

terms, not suggestive terms). Kyjen claims bungee is a suggestive term because it connotes the concept of stretchability, but does not suggest stretchable toys for dogs. Vo–Toys does not contest this assertion. Bungee does not convey an immediate idea of the product, but requires thought and imagination to conclude it refers to the stretchability or bounce of the pet toy. A bungee is not a typical toy component or alternative name for a dog toy. A bungee is a flexible cord generally used to secure or suspend an object. Bungee does not immediately describe a stretchable plush pet toy. The Court finds the term bungee is a suggestive term warranting trademark protection because it does not describe the plush pet toys, but suggests the products have a stretchability or bounce feature.[7]

▬ The parties do not dispute Vo–Toys' use of the term bungee to describe its dog, rabbit, duck, and ball tug toys. The exhibits of Vo–Toys' dog, rabbit, duck, and ball tug toys demonstrate Vo–Toys' use of the term bungee on the toys' tags. Plaintiff's Motion for Summary Judgment of its trademark infringement claim is GRANTED.

### D. *Injunctive Relief*

The Court will issue an appropriate injunction. Kyjen requests injunctive relief enjoining Vo–Toys from copying other Kyjen products and distributing infringing toys. *See* 17 U.S.C. § 503. Kyjen also requests the Court order Vo–Toys' supply of infringing toys be impounded or destroyed.[8] Plaintiff may submit a proposed injunction order within 10 days. Defendant shall submit any objections within 5 days thereafter. Service of such documents shall be by fax or personal delivery. In the meantime, Vo–Toys is hereby enjoined from distributing any of the infringing toys.

### PERMANENT INJUNCTION

In accordance with this Court's order dated July 29, 2002, granting summary judgment and injunctive relief in favor of Plaintiff The Kyjen Company, Inc., it is hereby ordered that:

1. Defendant Vo–Toys, Inc. is enjoined from copying the toys depicted in Exhibits 1A through 8A, attached hereto, and all other copyrightable toys of Kyjen, and from manufacturing and distributing any such unauthorized copies.

2. Defendant Vo–Toys, Inc. is enjoined from manufacturing and distributing the toys depicted in Exhibits 1B through 8B, attached hereto.

3. Within thirty days of the issuance of this order, Defendant Vo–Toys, Inc. shall deliver to Kyjen for destruction its inventory of the toys depicted in Exhibits 1B through 8B, attached hereto. Such delivery shall be made by certified mail or any other reliable service which provides proof of shipment.

4. Defendant Vo–Toys, Inc. is enjoined from using the trademark "Bungee" or any confusingly similar trademark in connection with the sale or distribution of plush toys.

5. In any proceeding to enforce Paragraph 1 of this order, Defendant Vo–Toys, Inc. may raise as an affirmative defense any challenge it may have to the copyrightability of the works at issue in the proceeding, other than the works depicted in Exhibits 1A through 8A hereto.

6. This order shall be binding upon Defendant Vo–Toys, Inc., its officers,

---

7. The Court need not determine whether bungee has a secondary meaning to be considered a descriptive term proper for trademark.

8. Vo–Toys indicated it has an inventory of approximately 10,000 infringing toys.

agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of this order, as set forth in Rule 65(d) of the Federal Rules of Civil Procedure.

**IT IS SO ORDERED.**

7

Exhibit 1A 1 of 1

Exhibit 1B ___1__ of __1__

Exhibit 2A  1  of  1

Exhibit 26 1 of 1

Exhibit 2A

11

Exhibit 3D ____ 1 .of .. 1 ....

12

Exhibit 6A _____, 6B ___ ___

V-0040

Exhibit_4a__1_of_1

V-0039

Exhibit

Vo-P
VERY IMPORTANT DOG

BOZIER
BUNGEE

Vo-Toys®

CAUTION: It is recommended that dogs be supervised when playing with all toys. Proper supervision should prevent accidental swallowing of this non-toxic toy. The product should be inspected periodically to ensure that the squeaker has not been chewed loose. Do not permit your pet to continue playing with this toy if it is chewed, broken or damaged.

Item No 68310

Duck Bungee

Vo-Toys Inc.,
Harrison, NJ 07029
Made in China

8

V-0013
Exhibit

Exhibit 7A 1 of 1

V-0016

Exhibit 76  1  of  2

VERY IMPORTANT PET

**Vo-Top**

**BouncO BUNGEE**

Vo-Toys®

CAUTION It is recommended that dogs be supervised when playing with all toys. Proper supervision should prevent accidental swallowing of this non-toxic toy. The product should be inspected periodically to ensure that the squeaker has not been chewed loose. Do not permit your pet to continue playing with this toy if it is chewed, broken or damaged.

Vo-Toys Inc.;
Hamsor: NJ 07029
Made in China

Item No.68312

0  75726 68312  7

Double Tug Bungee

V-0017

Exhibit 8A 1 of 1

V-0019

Exhibit 8b____1 of 1____