# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

————

No. 05-3463

————

Schwan's IP, LLC; Schwan's    *
Consumer Brands North America, Inc.,   *

         *

        Appellants,        *    Appeal from the United States
                         *    District Court for the
    v.                       *    District of Minnesota.
                         *
Kraft Pizza Company,        *

                         *

        Appellee.          *

————

Submitted: April 20, 2006
Filed: August 18, 2006

————

Before WOLLMAN, HANSEN, and BENTON, Circuit Judges.

————

WOLLMAN, Circuit Judge.

Schwan's IP, LLC, and Schwan's Consumer Brands North America, Inc., (collectively, Schwan's) appeal from the district court's[1] grant of summary judgment to Kraft Pizza Co. (Kraft) on Schwan's trademark infringement claim regarding the use of the term Brick Oven in describing frozen pizzas. We affirm.

———————————

[1]The Honorable Michael J. Davis, United States District Judge for the District of Minnesota.

# I.

Schwan's is the second largest producer and supplier of frozen pizzas in the United States. Its pizza brands include Red Baron, Tony's, and its premium brand, Freschetta. In early 2003, Schwan's introduced Freschetta Brick Oven pizza, a square, fire-baked crust topped with high quality ingredients. The pizza's crust is parbaked in a conveyor oven lined with ceramic tiles. The crust is then topped with sauce, meat, vegetables, and cheese in a different Schwan's facility. Consumers finish baking the pizza in their conventional home oven. Schwan's considered several names for its new product and ultimately chose Brick Oven, hoping to convey gourmet quality and a restaurant-like eating experience. When Schwan's began distributing Freschetta Brick Oven pizzas in March 2003, no other frozen pizza on the market used the term Brick Oven to identify certain pizzas, although Weight Watchers marketed a Brick Oven style pizza from 1992-96. Following Schwan's success, Market Day, Meijer, and Kraft began offering Brick Oven or Brick Oven style frozen pizzas.

Kraft is the largest producer and supplier of frozen pizzas in the country. Kraft's pizza brands include DiGiorno, Tombstone, California Pizza Kitchen, and Jack's. In early 2003, Kraft considered and rejected using the term Brick Oven to describe its DiGiorno thin crust pizza, concluding that Brick Oven did not have a clearly defined meaning to consumers. In October 2003, seven months after Schwan's launched Freschetta Brick Oven pizza, Kraft contacted packaging vendors to create a Tombstone Brick Oven style pizza to compete directly with Freschetta Brick Oven pizza. Kraft sought to place pricing pressure on Schwan's Freschetta Brick Oven pizza with a cheaper product, using the term Brick Oven style to denote similarities. In February 2004, Kraft began selling Tombstone Brick Oven style pizzas in grocery stores.

The United States Patent & Trademark Office (PTO) has on three occasions considered and denied Schwan's applications to register Freschetta Brick Oven and Brick Oven, concluding that Brick Oven is a generic term used to describe both frozen pizza and pizza generally. In its application, Schwan's described Brick Oven pizza as a style of pizza that appears to have been "baked in a brick wood fired oven providing a crispy exterior, a soft interior crust having characteristic toasted color indicia." Schwan's App. at 52. The second denial stated that the PTO has consistently found the term Brick Oven to be descriptive of baked goods. The examiner attached copies of sixteen third-party registrations in which exclusive use of the term was disclaimed,[2] as well as several newspaper stories using the term Brick Oven to identify certain pizzas. In its final rejection of Schwan's trademark applications for Freschetta Brick Oven and Brick Oven, the PTO stated that "the overwhelming evidence shows that Brick Oven is a generic term when used in connection with pizza, including frozen pizza." Kraft App. at 25. In 2005, Schwan's requested that the PTO suspend further action on the two applications pending resolution of this litigation.

Schwan's filed this trademark infringement suit against Kraft in January 2004, shortly before Kraft launched its Tombstone Brick Oven style pizza. In November 2004, Kraft moved for summary judgment, arguing that the term Brick Oven is either generic or descriptive and without secondary meaning. The district court granted Kraft's motion, concluding that Brick Oven is a generic term. It further determined that, even if Brick Oven is descriptive, it lacks secondary meaning and is thus not protectible.

---

[2]The PTO has registered seventeen marks that use the term Brick Oven in connection with baked goods. The PTO did not require the seventeenth registration to disclaim exclusive use of Brick Oven because the term was part of a slogan.

## II.

We review *de novo* the district court's grant of summary judgment, applying the same standards as the district court. Frosty Treats, Inc. v. Sony Computer Entm't Am., Inc., 426 F.3d 1001, 1003 (8th Cir. 2005). We view the facts in the light most favorable to the nonmoving party and will affirm if the record demonstrates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Id. "Upon motion and after adequate discovery, summary judgment should be entered 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). Because the PTO denied Schwan's application to register the Brick Oven mark, there is no presumption of the mark's validity, and Schwan's bears the burden of establishing that the mark is protectible under trademark law. See id.

Schwan's contends that the district court erred in granting summary judgment on its trademark infringement action because there is a genuine issue of material fact regarding whether the Brick Oven mark is distinctive. To determine whether a mark is distinctive and thus entitled to trademark protection, we must first categorize it as generic, descriptive, suggestive, or arbitrary. Id. at 1004 (citing Co-Rect Prods., Inc. v. Marvy! Adver. Photography, Inc., 780 F.2d 1324, 1329 (8th Cir. 1985)). Generic and descriptive marks are generally not protectible. Suggestive and arbitrary marks are inherently distinctive and protectible. Frosty Treats, Inc., 426 F.3d at 1005. The crucial inquiry in this case is whether Brick Oven is generic or descriptive.

A generic term can never function as a trademark because it refers to the common name or nature of the article. Id. A generic term does not identify the source of a product, but rather indicates the basic nature of the product. See id. "Because a generic term denotes the thing itself, it cannot be appropriated by one party from the public domain; it therefore is not afforded trademark protection even

if it becomes associated with only one source," Blinded Veterans Ass'n v. Blinded Am. Veterans Found., 872 F.2d 1035, 1039 (D.C. Cir. 1989), for a competitor must be able to "describe his goods as what they are." In re Merrill Lynch, Pierce, Fenner, & Smith, Inc., 828 F.2d 1567, 1569 (Fed. Cir. 1987) (quoting CES Publ'g Corp. v. St. Regis Publ'ns, Inc., 531 F.2d 11, 13 (2nd Cir. 1975)). Likewise, descriptive terms are generally not protectible because they are needed to describe all goods of a similar nature. Such a term describes the ingredients, characteristics, qualities, or other features of the product and may be used as a trademark only if it has acquired a secondary meaning. Id.; Co-Rect Prods., Inc, 780 F.2d at 1329. To be afforded protection, then, a descriptive term must be so associated with the product that it becomes a designation of the source rather than of a characteristic of the product. In re Merrill Lynch, Pierce, Fenner, & Smith, Inc., 828 F.2d at 1569. In the present case, if the primary significance of Brick Oven is to identify the product, and not to identify the source of that product, there can be no infringement action. See Nartron Corp. v. STMicroelectronics, Inc., 305 F.3d 397, 405 (6th Cir. 2002); Liquid Controls Corp. v. Liquid Control Corp., 802 F.3d 934, 936 (7th Cir. 1986).

In deciding genericness, evidence of the relevant public's understanding of a term "may be obtained from any competent source." In re Merrill Lynch, Pierce, Fenner, & Smith, Inc., 828 F.2d at 1570. Accordingly, Kraft may properly establish that Brick Oven is generic with evidence such as "newspapers and other publications, generic use by competitors, generic use of the term by the [party bringing suit], and use of the term by third parties in trademark registrations." Nartron Corp., 305 F.3d at 406.

We conclude that summary judgment was appropriate and that the district court correctly held that Brick Oven, as used to identify pizza, is a generic term. Indeed, as Tom Bierbaum, Schwan's longtime head of the Freschetta brand, confirmed, Brick Oven pizza is "a pizza that is cooked in a brick oven." Kraft App. at 271. Schwan's patent application supports this definition, stating that Brick Oven is a type of pizza

that "mimics the nature of a hand made, brick-oven baked product," and Schwan's has certified to the U.S. Department of Agriculture that it bakes the Freschetta Brick Oven crust in a "direct-fire brick oven." Schwan's App. at 61, 377.

Commentators and retailers within the frozen pizza industry also use the term Brick Oven to identify pizza that is baked in a brick oven or the term Brick Oven style to identify pizza that appears to have been baked in a brick oven. For example, an article from a retail trade magazine's website used Brick Oven generically when it explained that "[t]he growing popularity of thin crust, rising crust and brick oven varieties helped push frozen pizza sales up 3.3%." Kraft App. at 37. Likewise, Schwan's frozen pizza competitors have used the term to describe their products. Weight Watchers marketed a Brick Oven style pizza in the mid-1990s, Market Day began selling its Brick Oven pizza in June 2003, and Meijer launched its Brick Oven style pizza in February 2005.

Newspapers and restaurants use the term Brick Oven to denote pizzas that are baked in a brick oven, and the PTO has refused to grant any company or individual exclusive use of the term Brick Oven to describe baked goods. Attached to the PTO's second denial of Schwan's trademark application are twenty representative articles that support the district court's conclusion that the term Brick Oven is generic. From the *Detroit News* to the *New York Times* to the *Sacramento Bee* to the *Miami Herald*, the articles use the term Brick Oven generically, to name a type of pizza. Although Schwan's seeks to distinguish the frozen pizza market from the restaurant pizza market, Bierbaum testified that the same consumers who are buying restaurant pizza are buying frozen pizza. In fact, he testified that frozen pizza purchasers are a subset of restaurant pizza purchasers. Accordingly, use of Brick Oven to describe restaurant pizza is relevant to determine whether the term is generic.

# III.

Schwan's argues that the district court erred as a matter of law in ruling that Brick Oven was generic because it failed to consider Schwan's survey evidence in its genericness analysis. We disagree.

In <u>Anheuser-Busch Inc. v. Stroh Brewery Co.</u>, we concluded that the district court did not err in relying on consumer perceptions when it classified the mark LA as suggestive and granted the plaintiff a permanent injunction against its competitor. 750 F.2d 631, 637-38 (8th Cir. 1984). "[W]hen 'a coined word for a commercial product' is involved the proper test becomes 'what buyers understand by the word.'" <u>Id.</u> at 637-38 (quoting <u>Miller Brewing Co. v. Jos. Schlitz Brewing Co.</u>, 605 F.2d 990, 995 (7th Cir. 1979) (internal quotations omitted)). We distinguished that case, in which the party seeking trademark protection created the mark, from the Seventh Circuit case we quoted, in which the court concluded that survey evidence was irrelevant because the term at issue was regularly used before the plaintiff sought trademark protection. <u>Id.</u>

In <u>Miller Brewing Co. v. Jos. Schlitz Brewing Co.</u>, the Seventh Circuit determined that the term at issue was commonly used before its association with the products involved in the case. 605 F.2d at 995. Survey evidence, then, could show only that consumers had come to associate the term with the plaintiff's product and could not show that a generic term had become protectible. <u>See id.</u> As stated above, a generic term cannot be a trademark. <u>Frosty Treats, Inc.</u>, 426 F.3d at 1005.

More recently, the Fourth Circuit addressed this issue in <u>Hunt Masters, Inc. v. Landry's Seafood Restaurant, Inc.</u>, 240 F.3d 251 (4th Cir. 2001). There, the plaintiff offered a consumer survey to support its argument that the term Crab House was not generic and argued that the district court erred in failing to consider its survey evidence. <u>Id.</u> at 254-55. The appellate court affirmed, distinguishing between the

two ways a term may be classified as generic: "(1) where the term began life as a 'coined term'; and (2) where the term was commonly used prior to its association with the products at issue." Id. at 255. It held that consumer perception was relevant to determine whether a coined term for a commercial product (i.e. aspirin, teflon, thermos) had become generic. Id. Because the term at issue was commonly used before either party had named their restaurants, the survey evidence was irrelevant. Id. Similarly, Brick Oven was commonly used before either party began labeling their frozen pizzas with the term, and it was not error for the district court to omit the survey evidence from its genericness analysis.

Having concluded that the district court appropriately granted summary judgment in favor of Kraft on the genericness issue, we need not reach its alternative holding.

The judgment is affirmed.

_____