# United States Court of Appeals
## For the First Circuit

No. 06-1696

COLT DEFENSE LLC,

Plaintiff, Appellant,

v.

BUSHMASTER FIREARMS, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Lynch, Circuit Judge,

Selya, Senior Circuit Judge,

and Howard, Circuit Judge.

Michael A. Bucci, with whom Alexandra C. Fennell and Day, Berry & Howard LLP were on brief for, appellant.
Jeffrey M. White, with whom Robert H. Stier, Jr., Gavin G. McCarthy, and Pierce Atwood LLP were on brief, for appellee.

May 18, 2007

**HOWARD**, **Circuit Judge**.  This appeal arises out of a trademark dispute between Colt Defense LLC (Colt) and Bushmaster Firearms, Inc. (Bushmaster) over Bushmaster's use of the term "M4" in conjunction with its sale of certain firearms.  The district court concluded that the term was generic and not entitled to trademark protection.  We affirm.

**I.**

In 1959, Colt purchased the right to develop the Armalite Rifle model 15 (AR-15), a small-caliber, gas-operated carbine rifle initially developed at the Armalite Division of Fairchild Engine and Airplane Corporation.  Colt sold a variant of the AR-15 to the United States military, which eventually designated it as the M16.[1]

In the early 1980s, the military determined that it needed a more compact version of the M16.  Colt originally designed the prototype for this new weapon under a 1985 contract with the military in which Colt agreed to build and test forty "XM4 Carbines."[2]  In 1990, the military entered into an agreement with Bushmaster to provide sixty-five carbines "having all the physical and technical characteristics of the M4 Carbine."

---

[1]The "M" designation system is used by the military to identify one piece in a series of various sorts of equipment, e.g. firearms, tanks.  "M" stands for model, with each new version in the series receiving a sequential number.

[2]The "X" before "M" means that the piece is experimental and has not been officially classified.

In 1994, the military designated the new compact version of the M16 carbine as the M4. This was the latest in a series of carbine designations beginning with the M1 in 1940. The M4 characteristics were derived from the XM4 prototype designed by Colt. The M4 is a lightweight, gas-operated, air-cooled, magazine-fed, selective-rate-of-fire carbine with a collapsible stock. It shares about eighty percent commonality with the M16.

An intellectual property dispute arose between Colt and the military in the mid 1990's. Colt claimed that the military had breached a licensing agreement concerning the technology for the M16 by disclosing proprietary information to third parties. As part of the settlement of this dispute, the military and Colt executed the 1997 "M4 Carbine Addendum to Technical Data Sales and Patent License Agreement" (Addendum). The Addendum recognized Colt's right to the proprietary information incorporated in the M4 carbine design and defined the term "M4 Carbine" to mean "the compact carbine designed by Colt, 5.56mm, having a 14.5" barrel, with a telescoping buttstock, that is capable of firing in the semi-automatic and or three round bursts, defined in U.S. Government specification MIL-C-70559 . . . ." The design set forth in MIL-C-70559 was deemed proprietary to Colt and, as part of the Addendum, the military designated Colt as its sole supplier of M4s until 2011.

Outside of the military context, Colt and Bushmaster have long competed in the sale of carbines. Bushmaster is the leading producer of carbines for the United States commercial and law-enforcement markets, while Colt is the leading supplier to the U.S. military but also sells to foreign governments, law enforcement agencies, and the public.

Colt and Bushmaster each use the term "M4" in marketing versions of their carbines. Bushmaster began using M4 in its advertising in 1991 and has since done so continuously. In 1997, Bushmaster began to refer to the "M4 type" weapon in its advertising "to avoid possible confusion."[3] Colt has also used M4 continuously in its advertising since at least 1992 and registered M4 on the Principal Register of the Patent and Trademark Office in 2001. Other carbine manufacturers, including Heckler & Koch, Inc., also use M4 in their advertising.

In 2004, Colt filed an action in the United States District Court for the Eastern District of Virginia against Bushmaster and Heckler & Koch for, inter alia, infringing on its M4 mark in violation of the Lanham Act. See 15 U.S.C. § 1051 et seq. Bushmaster, a Maine-based company, successfully moved to have the claims against it severed and transferred to the United States District Court for the District of Maine. Bushmaster

---

[3]The record does not include an explanation of the sort of "confusion" this modification is intended to avoid.

counterclaimed for the cancellation of Colt's registration of the M4 mark. See id. § 1064.

Heckler & Koch settled with Colt. In the settlement agreement, Heckler & Koch was not required to pay Colt any money but acknowledged "that Colt owns the M4 trademark and agrees that Colt's M4 trademark is a valid and enforceable trademark that should not be cancelled on the grounds of genericness."

Bushmaster did not settle and, in due course, moved for summary judgment on Colt's infringement claim and its own cancellation counterclaim. The motion was assigned to a magistrate judge, who recommended granting Bushmaster's motion. The magistrate judge concluded that the undisputed evidence established that M4 was a generic term for a class of carbines and therefore could not be trademarked by Colt. Colt objected, but the district court adopted the recommendation without opinion. Colt appealed.

## II.

We review the district court's grant of summary judgment de novo. See Calvi v. Knox County, 470 F.3d 422, 426 (1st Cir. 2006). In so doing, we take as true the facts documented in the record below, resolving any factual conflicts or disparities in favor of the nonmovant. See Mulvihill v. Top-Flite Golf Co., 335 F.3d 15, 19 (1st Cir. 2003). A grant of summary judgment will be upheld if, after construing the record favorably to the nonmoving party, there is no genuine issue as to any material fact and the

-5-

moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

The purpose of a trademark is to identify and distinguish the goods of one party from those of another. See 15 U.S.C. § 1127. To the purchasing public, a trademark "signi[fies] that all goods bearing the trademark" originated from the same source and that "all goods bearing the trademark are of an equal level of quality." 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 3:2 (2007) [hereinafter McCarthy].

A proposed mark cannot acquire trademark protection unless the mark is distinctive, that is, unless it serves the purpose of identifying the source of the goods. Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1997). The Supreme Court has divided marks into five categories of distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. See id. (citing Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976) (Friendly, J.)). The further along this spectrum a term falls, the more likely it is to receive trademark protection. Id.

Generic terms, being the least distinctive, receive no trademark protection. See Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 193-94 (1985); I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 39 (1st Cir. 1998). "A generic term is one that does not distinguish the goods of one producer from the goods of

-6-

others. Instead, it is one that either by definition or through common use has come to be understood as referring to the genus of which the particular product is a species." Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 373-74 (1st Cir. 1980)(internal quotations omitted). Stated differently, a generic term answers the question "What are you?" while a mark answers the question "Where do you come from?" McCarthy § 12:1. For a term to be generic, then, its "primary significance . . . to the relevant public" must be to identify the nature of a good, rather than its source. 15 U.S.C. § 1064(3); Magic Wand, Inc. v. RDB, Inc., 940 F.2d 638, 641 (Fed. Cir. 1991).

Where, as here, the party claiming infringement has registered the term on the Principal Register, the registration establishes a rebuttable presumption that the term is not generic. 15 U.S.C. § 1115(a); Door Sys. Inc. v. Pro-Line Door Sys., Inc., 83 F.3d 169, 172 (7th Cir. 1996); Keebler, 624 F.2d at 373. This presumption may be overcome where the alleged infringer demonstrates genericness by a preponderance of the evidence. Keebler, 624 F.2d at 373; see also Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 929 (9th Cir. 2005); Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1529 n.4 (4th Cir. 1984). "In deciding genericness, evidence of the relevant public's understanding of a term may by obtained from any competent source." Schwan's IP, LLC v. Kraft Pizza Co., 460 F.3d 971, 974 (8th Cir.

2006) (internal quotations omitted). Such sources include consumer surveys, e.g., Keebler, 624 F.2d at 375, the use of the term in media publications, e.g., Murphy Door Bed Co. v. Interior Sleep Sys., Inc., 874 F.2d 95, 101 (2d Cir. 1989), use of the term by competitors in the industry, e.g., Schwan's, 460 F.3d at 975, purchaser testimony concerning the term, e.g., In re Merrill Lynch, Pierce, Fenner, and Smith, Inc., 828 F.2d 1567, 1570 (Fed. Cir. 1987), and the plaintiff's use of the term, Retailer Servs., Inc. v. Freebies Publ'g, 364 F.3d 535, 544 (4th Cir. 2004).

With this background, we consider the record evidence supporting Bushmaster's contention that M4 is generic. There are several examples of media publications using M4 in a generic fashion.[4] For example, an article appearing on a website called quarterbore.com described the "M4 Carbine [as] like the M16 but . . . more compact and featur[ing] a collapsible stock." This article, and several similar ones, refer to the M4 as a type of carbine with certain characteristics, not a brand of carbine sold by a certain producer, and therefore support a determination of genericness. See Murphy Door Bed, 874 F.2d at 101 (concluding that evidence of "numerous examples of newspaper and magazine use of the phrase Murphy bed to describe generally a type of bed" indicated genericness). In addition, there are several articles in the

_____

[4]Bushmaster did not submit a consumer survey to support its claim but such evidence, while "desirable" to establish genericness, is not required. Keebler, 624 F.2d at 375.

record that review and compare M4 carbines made by different producers. Consistent with generic use, these articles predominantly refer to the name of the manufacturer as the source identifier for an M4-type weapon, e.g., "Bushmaster M4A1," "Colt M4A1," "Rock River M4."

There is also evidence demonstrating that the term M4 is used by several of Colt's competitors in their advertising. This evidence is probative of generic use because "[t]he more members of the public see a term used by competitors in the field, the less likely they will be to identify the term with one particular producer." Classic Foods Int'l Corp. v. Kettle Foods, Inc., 468 F. Supp. 2d 1181, 11190 (C.D. Cal. 2007). Recently, the Eighth Circuit affirmed a summary judgment ruling that the term "brick oven" was generic as used to describe pizza. Schwan's, 460 F.3d at 971. To support its ruling, the court identified four other retailers that described their product as "brick oven pizza." Id. at 975. While there may be differences between the import of the terms "M4" and "brick oven pizza," the relevance of competitor usage to our inquiry is the same. And here, the record evidence is even stronger than in Schwan's -- at least fifteen gun manufacturers use M4 to describe their products.

Undisputed information from purchasers of carbines also supports the conclusion that M4 is generic. The record includes email messages sent to Bushmaster by a variety of consumers

representing civilian, law enforcement, and miliary purchasers. The emails use M4 as a generic descriptor. Some of the emails are from customers asking Bushmaster for the price of its M4 and information concerning shipment of its M4. These customers use the phrase M4 to describe the type of gun that they hope to purchase, not to identify the manufacturer of the gun. Cf. Glover v. Ampak, Inc., 74 F.3d 57, 59 (4th Cir. 1996) (stating that genericness can be shown by evidence showing that a purchaser entering a store uses a term to mean any brand of a particular item rather than the brand made by a single company).

Finally, there is evidence, albeit limited, that Colt itself has used M4 generically. Generic use by the party seeking trademark protection is relevant because "[a] kind of estoppel arises when the proponent of [a] trademark use is proven to have itself used the term before the public as a generic name . . . ." McCarthy § 12:13. The record contains a Colt document using the term M4 to describe a type of carbine. Specifically, a patent application filed by a Colt employee referred to "M4 type rifles and carbines" (emphasis added). See Pilates, Inc. v. Current Concepts, Inc., 120 F. Supp. 2d 286, 299 (S.D.N.Y. 2000) (use of challenged term to describe a product in a generic way by the party claiming infringement can suggest that a term is generic); Birtcher Electro Med. Sys., Inc. v. Beacon Labs., Inc., 738 F. Supp. 417, 420-21 (D. Colo. 1990) (similar).

In sum, Bushmaster presented sufficient evidence to rebut the presumption that Colt's mark is not generic. Moreover, this evidence if undisputed, would entitle Bushmaster to summary judgment on Colt's infringement claim and its cancellation counterclaim.[5] Colt contends, however, that the evidence submitted by Bushmaster was misinterpreted and overvalued, and that other evidence that would create a genuine issue of material fact was ignored. We first consider Colt's challenges to the evidence relied on by Bushmaster and then consider the evidence that Colt contends was ignored.

Colt claims first that the evidence concerning media publications is not particularly useful in the genericness inquiry and therefore should have been accorded "limited significance." In support of this proposition, it relies on a dictum from the Third Circuit that use of a term in trade journals to show generic use may be "problematic." Berner Int'l Corp. v. Mars Sales Co., 987 F.2d 975, 983 (3d Cir. 1993). The Third Circuit's concern related to the use of trade publications that are directed to producers of a product. The court explained that the use of these materials was "problematic" because "[a]rticles in trade journals may indicate

_____

[5]Colt does not dispute that a conclusion that M4 is generic as a matter of law would support a summary judgment ruling in Bushmaster's favor on the infringement claim and cancellation counterclaim. See McCarthy § 20:56 ("A registration can be cancelled at any time if the registered mark becomes the generic name for the good or services, or a portion thereof, for which it is registered.").

what a term means to the producer but not what it means to the relevant consuming public." Id. Here, however, the articles cited by Bushmaster to show generic use were articles written for consumers, not producers.[6] Thus, the concern expressed in Berner has no application because the articles relied on by Bushmaster do show the meaning of M4 to the relevant consuming public.[7]

Colt next challenges Bushmaster's reliance on purchaser testimony. As mentioned above, this evidence consisted of several communications from customers to Bushmaster in which they asked Bushmaster questions about its M4 carbine. Colt asserts that this evidence does not show generic use of M4 but rather purchaser confusion. It contends that these purchasers could be understood to have used M4 as a replacement for the name "Colt" and were demonstrating that they were confused about the source of the gun. This is not a reasonable inference from the evidence. See Nat'l

---

[6]In addition to the "quarterbore" website discussed above, Bushmaster relied on articles from Soldier of Fortune, Special Weapons, Gun & Weapons for Law Enfrocement and Shotgun News. These are all consumer-oriented publications.

[7]Colt also criticizes the reliance on Bushmaster's publication evidence on the ground that the magistrate judge's analysis contained an internal inconsistency. According to Colt, it is impossible to reconcile the magistrate judge's observation that the record contains numerous articles that identify M4 "as a Colt product" with his ultimate conclusion that the publication evidence supported genericness. This was not a contradiction at all. The magistrate judge meant that several articles used M4 to describe Colt's product in the same manner that M4 was used to describe other competitors' products, viz., along with the name of the producer (e.g. the "Rock River M4"/the "Colt M4"). As discussed earlier, this type of usage supports a finding of genericness.

Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 743 (1st Cir. 1995) ("a court pondering a Rule 56 motion need not embrace inferences that are wildly improbable or that rely on tenuous insinuation"). These purchasers intentionally directed their email communications about purchasing M4s to Bushmaster at Bushmaster's website; there is nothing to suggest that, in asking Bushmaster about an M4 that it was selling, these purchasers thought that they were asking Colt about a weapon that it was selling or were asking Bushmaster about a Colt product.

Turning to the evidence that Colt contends was overlooked, we begin with Colt's registration of M4 on the Principal Register. Colt claims that its successful registration is a fact that, by itself, defeats Bushmaster's summary judgment motion. This is so, according to Colt, because even after Bushmaster put forward evidence to rebut the presumption of validity established by the registration, "the registration continued to serve as strong evidence that the trademark is not generic in the eyes of the relevant public."

Colt's argument overstates the significance of a registered mark. As stated above, a registered mark serves to establish a rebuttable presumption that the mark is subject to trademark protection. Borinquen v. Biscuit Corp. M.V. Trading Corp., 443 F.3d 112, 117-18 (1st Cir. 2006). However, once this presumption has been overcome, the party holding the certificate of

registration may not avoid summary judgment simply by pointing to the certificate as evidence. See Retail Servs., 364 F.3d at 543-44; Natron Corp. v. STMicroelectronics, Inc., 305 F.3d 397, 405 (6th Cir. 2002); Tie Tech, Inc. v. Kinedyne Corp., 296 F.3d 778, 784 (9th Cir. 2002); Liquid Controls Corp. v. Liquid Control Corp., 802 F.2d 934, 937 n.2 (7th Cir. 1986).

Colt relies on the Fourth Circuit's decision in America Online, Inc. v. AT&T Corp. 243 F.3d 812 (4th Cir. 2001), for the proposition that proof of registration is, by itself, adequate to defeat a summary judgment motion. But America Online "nowhere suggested that registration created a per se issue of fact sufficient to defeat summary judgment." Retail Servs., 364 F.3d at 543. The certificate of registration was sufficient to defeat summary judgment in America Online only because the plaintiff submitted "other evidence" that the mark was not generic. Id.; see also Tie Tech, 296 F.3d at 784 (concluding that America Online does not stand for the proposition that "registration itself would always raise a material issue of fact").

Colt next asserts that summary judgment was improper, because there was evidence that the military associates the term M4 with Colt and that, based on this evidence, a reasonable factfinder could conclude that M4 is not generic. Colt contends that this evidence was incorrectly excluded, because its exclusion was based on the court's erroneous view that the military's understanding was

irrelevant because "it was not among the classes of purchasers who are free to choose among the products of competing manufacturers."

We agree with Colt that it would be incorrect to exclude evidence of the military's understanding of the term M4 simply because it had a sole-source contract with Colt and therefore could not purchase the weapon elsewhere. The test for genericness is the "primary significance of the mark to the <u>relevant</u> public." 15 U.S.C. § 1064(3) (emphasis added). Sometimes, the relevant public will not be the potential purchasing public as a whole but rather "a relatively small group of highly trained and knowledgeable customers." <u>Nartron Corp.</u>, 305 F.3d at 406. The military is, of course, a significant and sophisticated participant in the carbine-purchasing market, and we know of no trademark law principle that renders its understanding of the meaning of M4 inadmissible simply because it was under contract to buy exclusively from Colt.

But that evidence should be considered does not mean that it carries enough weight to create a triable issue. Colt relies primarily on the Addendum to show that the military associates the term M4 with Colt and points specifically to the provision of the Addendum that provides that the M4 is a carbine "designed by Colt."

The Addendum does not provide an opinion from the military that it believed that M4 was a term associated with Colt. The Addendum memorialized a procurement arrangement negotiated between Colt and the military to resolve an intellectual property

dispute.  The military could have contracted with multiple producers or given a sole-source contract to another producer to provide it with M4s.  Indeed, in 1990, the military did so by contracting with Bushmaster for M4s.

At bottom, the Addendum is merely evidence of a business relationship of a limited duration between Colt and the military; it is not evidence of the military's general and enduring understanding of the meaning of M4 outside of the contractual relationship.  The genericness inquiry is "concerned with the common use of language," McCarthy § 12:4, not the defined terms in a negotiated contract between the trademark holder and a third party.[8]  Indeed, there is every possibility that the military will contract with another producer to build M4s in 2011, when the Addendum's sole-source provision expires.  If the Addendum supported a non-generic finding and the military does change suppliers in 2011, it could lead to the absurd result of the military being prevented from identifying the weapon by use of the very classification system that it originally have devised.

Colt next points to Heckler & Koch's settlement of Colt's infringement claim as evidence of non-generic use.  In the settlement (which did not require Heckler & Koch to pay any money),

---

[8]We further observe that terms within an agreement are often defined for the very reason that the common use of a term does not accurately capture the parties' intended meaning for purposes of the relationship.

Heckler & Koch stated "that Colt owns the M4 trademark and agrees that Colt's M4 trademark is a valid and enforceable trademark that should not be cancelled on the grounds of genericness." This statement is not probative for the same basic reason as the evidence concerning the Addendum: it is not evidence of the common use of M4. It is evidence that Heckler & Koch agreed to a legal conclusion for which Colt negotiated. For obvious reasons, such evidence has little, if anything, to do with the general understanding of M4 to the relevant public.[9]

Finally, Colt contends that evidence that there are words other than M4 to designate the product at issue was ignored. According to Colt, such evidence is probative of non-generic use because the existence of other suitable identifiers suggest that M4 is not a name for a type of gun but rather is an identifier of the brand of gun. Colt argues that the words carbine, rifle, and firearm are adequate alternative descriptors of the M4.

This argument is misplaced. The M4 is a lightweight, gas-operated, air-cooled, magazine-fed, selective-rate-of-fire

---

[9]Colt also contends that Bushmaster "implicitly acknowledged" that M4 is a non-generic term by agreeing in 1997 to use the term M4-type "to reduce confusion." As we noted earlier, supra note 3, the record contains neither an explanation of the type of confusion that Bushmaster sought to reduce nor other evidence concerning Bushmaster's decisions to refer to the M4-type weapon (although one possible inference is that the reason was that it would be illegal to sell an automatic M4 to the public). In any event, it would be pure speculation to conclude that this is evidence of Bushmaster's understanding that M4 was not a generic term; the evidence adds little to Colt's case.

weapon with a collapsible stock.  Colt has identified no word, other than M4, that captures these characteristics.  The closest term Colt identifies is "carbine," but carbine means only a "short-barreled lightweight rifle."  Webster's Third New Int'l Dictionary 335 (1993).  It does not capture the several characteristics that comprise an M4.

To summarize, Colt was integral to the development of the technology that comprised the type of carbine designated by the military as the M4.  But there is no dispute that the term M4 was coined by the military as part of its weapons designation nomenclature.  Bushmaster presented evidence that the relevant consuming public continues to associate M4 with the military designation for a carbine that has certain characteristics.  Colt has presented no more than a scintilla of evidence to show that the relevant public has come to understand M4 as an identifier of a Colt-made product.  See Hochen v. Bobst Group, Inc., 290 F.3d 446, 453 (1st Cir. 2002) (stating that non-moving party must offer more than a "mere scintilla" of evidence to survive summary judgment motion).  Accordingly, the district court correctly granted Bushmaster summary judgment on Colt's infringement claim and its cancellation counterclaim.[10]

_____

[10]Colt also sued Bushmaster for infringement of the term "Match Target."  The magistrate judge recommended granting Bushmaster summary judgment on the ground that there was no likelihood of confusion.  See Borinquen Biscuit, 443 F.3d at 120 (showing of likelihood of confusion is element of trademark infringement

**III.**

For the reasons stated above, the judgment is **affirmed**. Costs are awarded to Bushmaster.

---

claim).  In its objection to the magistrate judge's recommendation, Colt did not specifically challenge the ruling pertaining to the "Match Target" infringement claim.  Accordingly, Colt's appellate challenge to this ruling is waived.  Santiago v. Canon USA, Inc., 138 F.3d 1, 4 (1st Cir. 1998) ("[A] party's failure to assert a specific objection to a report and recommendation irretrievably waives any right to review by the district court and the court of appeals.").