NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-325                                            Appeals Court


UNITED OIL HEAT, INC.[1]  vs.  M.J. MEEHAN EXCAVATING, INC.,
& another.[2]


No. 18-P-325.

Bristol.     October 10, 2018. - July 12, 2019.

Present:  Neyman, Ditkoff, & Englander, JJ.


Trademark.  Consumer Protection Act, Trademark.  Internet.
    Practice, Civil, Motion to dismiss.  Oil and Gas.



    Civil action commenced in the Superior Court Department on
August 2, 2017.

    A motion to dismiss was heard by Karen F. Green, J.


    Mark A. Berthiaume (Zachary C. Kleinsasser also present)
for the defendants.
    Ryan E. Prophett for the plaintiff.


    NEYMAN, J.  In this case we consider whether the Internet

domain name "OrderMyOil.com" is entitled to trademark protection

under Massachusetts common law.  On the complaint before us, we

_____

    [1] Doing business as OrderMyOil.com.

    [2] Michael Meehan.

hold that OrderMyOil.com is a generic name that is ineligible for such protection. Accordingly, this case presents the rare instance in which a trademark claim was properly dismissed under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).

Background. 1. Facts. The plaintiff, United Oil Heat, Inc., doing business as OrderMyOil.com, delivers home heating oil to customers in Massachusetts, southern New Hampshire, and northern Rhode Island. The plaintiff's website, using the Internet domain name OrderMyOil.com, went live in August 2008.[3] As its name denotes, the website allows customers to order heating oil online for delivery. As of August 2, 2017, OrderMyOil.com had over 20,000 registered users, had sold over fifteen million gallons of home heating fuel, and had "done approximately $52,000,000 in revenue." The plaintiff marketed OrderMyOil.com through various media outlets. OrderMyOil.com also had a Facebook page with over 900 "likes," and delivery trucks displaying OrderMyOil.com thereon. The plaintiff does not allege that it registered OrderMyOil.com as a trademark in the United States or in any other jurisdiction.

In February of 2016, the defendants, M.J. Meehan Excavating, Inc., and Michael Meehan, began using "OrderYourOil"

---

[3] The plaintiff registered the domain name "discountheatingoilprices.com" with GoDaddy.com, LLC, in April of 2008. In June of 2008, the plaintiff registered the domain name OrderMyOil.com with GoDaddy.com, LLC.

in connection with their home heating oil delivery services. OrderYourOil is a supplier of home heating and diesel fuel. The complaint alleges that the defendants offer the same goods and services as the plaintiff, in the same geographic areas. The defendants' website likewise allows customers to order heating oil online for delivery.

2. <u>Procedural history</u>. On August 2, 2017, the plaintiff filed its complaint in the Superior Court, alleging common law trademark infringement, trademark dilution under G. L. c. 110H, § 13,[4] and violation of G. L. c. 93A, § 11.[5] The defendants moved to dismiss the complaint under Mass. R. Civ. P. 12 (b)

---

[4] General Laws c. 110H, § 13, provides that "[l]ikelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services."

[5] On or about February 1, 2017, several months before filing the action at issue in this appeal, the plaintiff filed a complaint with the National Arbitration Forum under the Internet Corporation for Assigned Names and Numbers (ICANN) Uniform Domain Name Dispute Resolution Policy, seeking to transfer or cancel the OrderYourOil.com domain name. On March 9, 2017, the National Arbitration Forum panel (arbitration panel) denied the ICANN complaint. As the plaintiff did not reference the arbitration or the arbitration panel's decision in its Superior Court complaint, we do not consider them in our analysis. Cf. <u>Silverwood Partners, LLC</u> v. <u>Wellness Partners, LLC</u>, 91 Mass. App. Ct. 856, 857 n.4 (2017) ("we need not decide whether to take judicial notice of the arbitration decision, as it does not factor into our decision"). Likewise, the Superior Court judge did not consider the arbitration or the arbitration panel's decision in deciding the motion to dismiss.

(6).  Following a hearing, the judge issued a written decision and order allowing the motion.[6]  The judge concluded that OrderMyOil is a generic name that is not entitled to trademark protection, and that the plaintiff failed to state a claim for trademark infringement, trademark dilution, or violation of G. L. c. 93A.  Judgment entered for the defendants.  The plaintiff now appeals.[7]

Discussion.  1.  Legal standards.  a.  Motion to dismiss. "We review the allowance of a motion to dismiss de novo," Curtis v. Herb Chambers I-95, Inc., 458 Mass. 674, 676 (2011), accepting as true the facts alleged in the plaintiff's complaint as well as any favorable inferences that reasonably can be drawn from them.  See Lopez v. Commonwealth, 463 Mass. 696, 700 (2012).  "What is required at the pleading stage are factual 'allegations plausibly suggesting (not merely consistent with)'

---

[6] The plaintiff also filed a motion for a preliminary injunction seeking, inter alia, to enjoin the defendants from using the name OrderYourOil in any way.  Having allowed the motion to dismiss, the judge took no action on the preliminary injunction motion.

[7] The plaintiff did not seek trade dress protection, as confirmed at oral argument.  A trade dress is "the design and appearance of [a] product together with the elements making up the overall image that serves to identify the product presented to the consumer."  Chrysler Corp. v. Silva, 118 F.3d 56, 58 (1st Cir. 1997), quoting Fun-Damental Too, Ltd. v. Gemmy Indus. Corp., 111 F.3d 993, 999 (2d Cir. 1997).  See 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:1 (5th ed. 2017) (defining trade dress and comparing to and contrasting with trademark).

an entitlement to relief . . . ." Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007) (Twombly). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." Twombly, supra at 555.

b. Trademark law principles. In Massachusetts, the test for common law trademark infringement is the same as under the Lanham Act.[8] See Jenzabar, Inc. v. Long Bow Group, Inc., 82 Mass. App. Ct. 648, 654 n.11 (2012) ("The gravamen of a claim of trademark infringement under Massachusetts common law is the same as under the Lanham Act"). See also Bose Corp. v. Ejaz, 732 F.3d 17, 26 n.7 (1st Cir. 2013) (common law trademark infringement claims in Massachusetts require same elements as Federal trademark infringement claims); Leejay, Inc. v. Bed Bath & Beyond, Inc., 942 F. Supp. 699, 701 n.2 (D. Mass. 1996)

---

[8] In 1946, Congress enacted the Trademark Act of 1946 (Lanham Act), 15 U.S.C. §§ 1051 et seq. "[T]he purpose of the Lanham Act was to codify and unify the common law of unfair competition and trademark protection." Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 861 n.2 (1982) (White, J., concurring). Under the Lanham Act, a trademark is defined as "any word, name, symbol, or device, or any combination thereof" that is used "to identify and distinguish [the user's] goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127 (2012). The Lanham Act also "protects qualifying unregistered marks." Boston Beer Co. Ltd. Partnership v. Slesar Bros. Brewing Co., 9 F.3d 175, 180 (1st Cir. 1993), citing Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992).

("trademark infringement is defined in essentially the same terms under the Lanham Act and under Massachusetts law"); <u>Black Dog Tavern Co</u>. v. <u>Hall</u>, 823 F. Supp. 48, 53-54 (D. Mass. 1993) (same).[9]  Under that test, "[t]o succeed on a claim of trademark infringement, a plaintiff must establish (1) that its mark is entitled to trademark protection, and (2) that the allegedly infringing use is likely to cause consumer confusion."  <u>Boston Duck Tours, LP</u> v. <u>Super Duck Tours, LLC</u>, 531 F.3d 1, 12 (1st Cir. 2008).

As to the first requirement, "[a] proposed mark cannot acquire trademark protection unless the mark is distinctive, that is, unless it serves the purpose of identifying the source of the goods."  <u>Colt Defense LLC</u> v. <u>Bushmaster Firearms, Inc</u>., 486 F.3d 701, 705 (1st Cir. 2007), citing <u>Two Pesos, Inc</u>. v. <u>Taco Cabana, Inc</u>., 505 U.S. 763, 768 (1992).  In making this determination, courts categorize "proposed marks along a spectrum of distinctiveness."  <u>Boston Duck Tours, LP</u>, 531 F.3d at 12.  That spectrum contains five categories:  generic, descriptive, suggestive, arbitrary, or fanciful.  <u>Id</u>.

At one end of the spectrum there are generic terms, which can never merit trademark protection because they cannot

---

[9] Both parties rely on Federal case law to support their arguments.  This is unsurprising in view of the dearth of Massachusetts cases analyzing common law trademark infringement after the enactment of the Lanham Act in 1946.

distinguish the goods or services of one producer from the goods or services of another.[10]  See Boston Duck Tours, LP, 531 F.3d at 13-14 ("generic terms are incapable of becoming trademarks"); Colt Defense LLC, 486 F.3d at 705 (generic terms receive no trademark protection); Miller Brewing Co. v. Falstaff Brewing Corp., 655 F.2d 5, 7 (1st Cir. 1981) ("Under no circumstances is a generic term susceptible of de jure protection under § 43[a] of the Lanham Act . . . or under the law of unfair competition").  A generic term "is one that either by definition or through common use has come to be understood as referring to the genus of which the particular product is a species." Colt Defense LLC, supra, quoting Keebler Co. v. Rovira Biscuit Corp., 624 F.2d 366, 373-374 (1st Cir. 1980).  "[A] generic term answers the question 'What are you?' while a mark answers the question 'Where do you come from?'"  Colt Defense LLC, supra,

---

[10] "Awarding trademark rights to any user of [a generic term], especially the first user, would harm competitors and consumers alike.  Competitors unable to use a common term that describes or designates their product are at a significant disadvantage communicating to potential customers the nature and characteristics of the product. . . .  Likewise, consumers will be forced either to pay a higher price to purchase the desired goods from the seller who owns the generic term as a trademark or expend additional time investigating the alternative products available."  Boston Duck Tours, LP, 531 F.3d at 14.  See Closed Loop Mktg., Inc. v. Closed Loop Mktg., LLC, 589 F. Supp. 2d 1211, 1220 (E.D. Cal. 2008) ("to allow a producer of goods to usurp a generic term as a protectable trademark would prevent competitors from describing their own goods adequately" [quotation omitted]).

quoting 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 12:1 (2007). "For a term to be generic, then, its primary significance . . . to the relevant public must be to identify the nature of a good [or service], rather than its source" (quotation omitted). Colt Defense LLC, supra. Moreover, "[a] term that names the central focus or subject matter of the services is generic for the services themselves." In re Tires, Tires, Tires, Inc., 94 U.S.P.Q.2d 1153, 1157 (Trademark Trial & App. Bd. 2009). See In re Meridian Rack & Pinion, 114 U.S.P.Q.2d 1462, 1466 (Trademark Trial & App. Bd. 2015) ("'BuyAutoParts' is a generic phrase for auto parts retail sales"). A genericism analysis requires viewing the name in its entirety, rather than dissecting it into its constituent parts. See Boston Duck Tours, supra at 18-19 ("a complete phrase may signify something different than the sum of its parts").

Next on the spectrum, there are descriptive terms, which "convey an immediate idea of the ingredients, qualities or characteristics of the goods to which they are attached" (quotation omitted). Boston Duck Tours, LP, 531 F.3d. at 13. A descriptive term can receive trademark protection "only if it has acquired secondary meaning by which consumers associate it with a particular producer or source" (quotation omitted). Boston Beer Co. Ltd. Partnership v. Slesar Bros. Brewing Co., 9

F.3d 175, 180 (1st Cir. 1993). Whether a term has acquired secondary meaning is a question of fact. Id.

Finally, "[a]t the other end of the spectrum, there are suggestive, arbitrary and fanciful terms that can be protected without proof of secondary meaning. These terms are considered inherently distinctive" (quotation omitted). Boston Beer Co. Ltd. Partnership, 9 F.3d at 180. In contrast, "generic marks can never be ranked as distinctive." Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 116 (1st Cir. 2006), citing Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985).

2. Analysis. a. Generic name and secondary meaning. The plaintiff does not allege that it registered OrderMyOil.com as a trademark, and there is no dispute that it is not registered. Instead, the plaintiff contends that the name OrderMyOil.com, even if generic, is entitled to protection under Massachusetts "common law if it has acquired a 'secondary meaning' in the minds of the relevant public." The defendants respond that generic terms are never entitled to trademark protection. The defendants have the better argument.

First, as discussed above, it is black letter law that generic names cannot receive trademark protection. See Boston Duck Tours, LP, 531 F.3d at 14; Colt Defense LLC, 486 F.3d at 705; Miller Brewing Co., 655 F.2d at 7. "Because they serve

primarily to describe products rather than identify their sources, generic terms are incapable of becoming trademarks, at least in connection with the [services] that they designate." Boston Duck Tours, LP, supra. Accordingly, assuming the name OrderMyOil.com is generic, it cannot acquire secondary meaning. See Closed Loop Mktg., Inc. v. Closed Loop Mktg., LLC, 589 F. Supp. 2d 1211, 1220 (E.D. Cal. 2008) ("Once it has been established that a name is generic, that name is ineligible for protection regardless of any evidence of a secondary meaning"). As explained in a leading treatise:

> "[i]t is jarring and incongruous to intrude the terminology 'secondary meaning' into a dispute as to whether a designation is an unprotectable generic name or is a protectable trademark. . . . If a designation is a generic name, then it is not a trademark. If it is not a trademark, then, by definition, it does not have the kind of 'secondary meaning' needed to achieve trademark status."

2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 12:46, at 12-198 (5th ed. 2019). See Desai & Rierson, Confronting the Genericism Conundrum, 28 Cardozo L. Rev. 1789, 1809 (2007) ("Generic words are unprotectable under the Lanham Act and the common law doctrine of unfair competition because they do not [or no longer] have the capacity for source identification. The generic name is incapable of ever becoming a trademark, at least as to the product with which the generic name is associated" [footnote omitted]).

The plaintiff responds that Massachusetts common law affords protection to any name that has acquired secondary meaning regardless of whether it is generic or descriptive. As authority for this proposition the plaintiff relies on the following language from Jenney Mfg. Co. v. Leader Filling Stations Corp., 291 Mass. 394, 397-398 (1935) (Jenney):

> "[i]t is settled that a word or device in common use, which is not susceptible of being a technical trade mark because generic or descriptive, may nevertheless be used in such a manner as to confer on the user the right to be protected against a subsequent similar use by a competitor in marketing a similar product. . . . In the case of a word not subject to exclusive appropriation there may be such a use in connection with a product as to attach to the word a secondary meaning, through association, as denoting the product of the user."

This reliance on Jenney is unpersuasive.

In Jenney, the Supreme Judicial Court determined that the mark at issue -- "Aero" -- when used in connection with the sale of gasoline, had acquired a secondary meaning. Jenney, 291 Mass. at 397, 399. The court did not, however, hold that the term "Aero" used in connection with gasoline is generic, and did not suggest that "Aero," unlike "gas," was a common way to refer to gasoline. Rather, "Aero" as used in Jenney appears to have been a descriptive term related to the use of gasoline in "aeroplanes." Jenney, 291 Mass. at 396. There was no claim, argument, or discussion in Jenney regarding the threshold question whether the term "Aero" was generic, descriptive,

suggestive, arbitrary, or fanciful.  Thus, <u>Jenney</u> is inapposite,

as the issue in dispute in the present case was not addressed

there.[11]

    <u>Jenney</u>, decided in 1935 -- over a decade before the

enactment of the Lanham Act -- is best understood in its pre-

Lanham Act context.  In that context, common law courts

> "did not attempt to draw a bright line between generic and
> descriptive terms.  In other words, common law courts --
> unlike modern ones -- did not devote a great deal of
> attention to determining whether a given term should be
> etymologically classified as generic or descriptive.  Both
> 'words descriptive of qualities or attributes' and 'generic
> designations' were potentially protectable as trade names
> (but not as technical trademarks) if they functioned as
> source identifiers in the marketplace; if, in other words,
> they had acquired secondary meaning" (footnote omitted).

Desai & Rierson, Confronting the Genericism Conundrum, 28

Cardozo L. Rev. at 1816-1817.  See <u>George G. Fox Co</u>. v. <u>Glynn</u>,

191 Mass. 344, 349-350 (1906) ("The courts will not recognize

trademarks which are not chosen in such a way as not to conflict

with the rights of others to use common names and things" but

courts may recognize "trade names" where goods "come to be known

as of a particular manufacturer, and acquire a valuable

reputation, by means of a designation that could not be made the

---

[11] The plaintiff's reliance on <u>Planned Parenthood Fed'n of Am., Inc</u>. v. <u>Problem Pregnancy of Worcester, Inc</u>., 398 Mass. 480 (1986), is similarly unavailing, as there was no argument in that case that the trade name in question was generic.

subject of a trademark, because others may have occasion to make some use of the words or marks chosen").

Moreover, as discussed above, we have long recognized that the test for trademark infringement under Massachusetts common law is the same as under the Lanham Act. See Jenzabar, Inc., 82 Mass. App. Ct. at 654 n.11. See also Bose Corp., 732 F.3d at 26 n.7; Leejay, Inc., 942 F. Supp. at 701 n.2; Black Dog Tavern Co., 823 F. Supp. at 53-54. Thus, viewed in its pre-Lanham Act context, the reference to "generic" terms acquiring secondary meaning in Jenney is best understood as dicta. Accordingly, the plaintiff's contention that a generic name is entitled to trademark protection under Massachusetts common law is unavailing.

b. Nongeneric claim. In the alternative, the plaintiff argues that the complaint sufficiently alleged that OrderMyOil.com is a distinctive, nongeneric mark that is entitled to trademark protection. See Colt Defense LLC, 486 F.3d at 705 ("A proposed mark cannot acquire trademark protection unless the mark is distinctive, that is, unless it serves the purpose of identifying the source of the goods"). We disagree.

The complaint goes to great lengths to attempt to demonstrate secondary meaning, and to satisfy the second prong of a trademark infringement claim -- that the defendants' use of

OrderYourOil "is likely to cause consumer confusion." <u>Boston Duck Tours, LP</u>, 531 F.3d at 12. For example, the complaint asserts that the plaintiff "is in the business of delivering home heating oil"; that the plaintiff created "a real e-commerce site with functionality that would offer heating oil to customers at a discounted price in an easy to use manner"; that the plaintiff "expended an enormous amount of time and money in marketing OrderMyOil.com"; that OrderMyOil.com "has over 20,000 registered users, has sold over 15 million gallons of home heating fuel[,] and done approximately $52,000,000.00 in revenue"; that OrderMyOil.com "delivers home heating fuel to eighty percent (80%) of Massachusetts, southern New Hampshire and northern Rhode Island"; that the defendants' use of OrderYourOil commenced "well after [the plaintiff] made its first commercial use of OrderMyOil"; and that "OrderYourOil is confusingly similar to" OrderMyOil.com, which "is likely to cause confusion, or to cause mistake, or to deceive consumers or potential consumers in violation of Massachusetts common law."

The latter two allegations speak to the element of consumer confusion, but do not address the first element of a trademark infringement claim -- whether OrderMyOil.com is entitled to trademark protection. Similarly, the other allegations purport to exhibit secondary meaning in the phrase OrderMyOil.com. None of them speak to the issue whether OrderMyOil.com is generic.

Although the determination of classification of a purported mark typically entails a factual inquiry,[12] none of these allegations plausibly suggest that the name OrderMyOil.com does anything more than identify the nature of a service.  The allegations do not "convey an immediate idea of the ingredients, qualities or characteristics of the goods to which they are attached" (quotation omitted).  Boston Duck Tours, LP, 531 F.3d. at 13. As a matter of law, the allegations purportedly establishing secondary meaning do nothing to alter that fact.  See Closed Loop Mktg., Inc., 589 F. Supp. 2d at 1219-1220 ("allegations establishing a secondary meaning do not indicate that the term is not generic.  The question is whether the original meaning of the name identifies a thing's [or service's] genus or . . . its qualities.  Plaintiff does not provide allegations or arguments that speak directly to this question, and thus secondary meaning

---

[12] As the plaintiff argues, many courts have held that the determination whether a term is generic is a question of fact. See, e.g., Boston Beer Co. Ltd. Partnership, 9 F.3d at 180 ("Whether a term is generic, descriptive, or inherently distinctive is a question of fact").  But see America Online, Inc. v. AT & T Corp., 243 F.3d 812, 821 (4th Cir. 2001) (analysis of meaning and usage of "would-be mark" is mixed question of fact and law).  Where, as here, the issue can be determined as a matter of law, there is nothing precluding the allowance of a motion to dismiss on the issue of genericness. See, e.g., CES Publ. Corp. v. St. Regis Publs., Inc., 531 F.2d 11, 14-15 (2d Cir. 1975) (motion to dismiss appropriate as generic name could not "be rescued as trademark[] by" proof of secondary meaning); Closed Loop Mktg., Inc., 589 F. Supp. 2d at 1220 (finding "closed loop marketing" generic and allowing defendant's motion to dismiss).

is beside the point").  See also CES Publ. Corp. v. St. Regis Publs., Inc., 531 F.2d 11, 14-15 (2d Cir. 1975).  The pleadings instead demonstrate that the relevant public and the plaintiff use OrderMyOil or "order my oil" within the "heartland" of "common meaning of words and their common usage."  America Online, Inc. v. AT & T Corp., 243 F.3d 812, 821 (4th Cir. 2001).  See id. at 822 ("the repeated use of ordinary words functioning within the heartland of their ordinary meaning, and not distinctively, cannot give [the user] a proprietary right over those words, even if an association develops between the words and [the user]").  Put another way, the term OrderMyOil.com is a generic name that answers the question, "What are you?"  The answer is, "A website where I may order my oil."  See id. at 819-820 ("You Have Mail" generic as matter of law in granting summary judgment).  See also 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11:11.

We further note that the present case involves a name that identifies the focus of a service.  In this context, we are mindful that "a term that names the 'central focus' or 'key aspect' of a service is generic for the service itself."  In re Meridian Rack & Pinion, 114 U.S.P.Q.2d at 1464.  Here, the name OrderMyOil.com "identifies a key aspect of [the plaintiff's] services, i.e., the [service provided on the website]" and therefore it "is generic for the services themselves."  In re

Tires, Tires, Tires, Inc., 94 U.S.P.Q.2d at 1157.  See In re
Meridian Rack & Pinion, supra at 1466 ("'BuyAutoParts' is a
generic phrase for auto parts retail sales").

During oral argument, the plaintiff conceded that the term
"OrderOil" is generic.[13]  The plaintiff argues, however, that the
addition of "my" to OrderOil removes the term from the generic
realm because "it takes imagination, thought and perception to
reach the conclusion that the customer is ordering their own oil
from the Company called 'OrderMyOil,'" as opposed to the
plaintiff's oil.  See Equine Techs., Inc. v. Equitechnology,
Inc., 68 F.3d 542, 544 (1st Cir. 1995) ("A term is suggestive if
it requires imagination, thought and perception to reach a
conclusion as to the nature of goods" [quotation omitted]).  The
argument is unavailing.  The plaintiff has merely inserted a
commonly used possessive pronoun between what it has conceded
are two generic words, resulting in a generic name that even
more directly answers the question "What are you?" than the term
OrderOil.  See Colt Defense LLC, 486 F.3d at 705.  Compare
Boston Duck Tours, LP, 531 F.3d at 12 n.10 ("'COPPERTONE' is

---

[13] In 2016, the owner of "ORDEROIL" sought to transfer or
cancel the domain name OrderMyOil.com.  A National Arbitration
Forum panel (arbitration panel) denied the claim.  See Tiger
Payment Solutions LLC vs. Wes Madan/United Oil Heat, Inc., FA
1602001660350 (March 23, 2016).  We reference the arbitration to
provide context, but do not consider the arbitration or the
arbitration panel's decision in our analysis.  See note 5,
supra.

suggestive of suntan lotion because it hints at the nature of the connected product"); America Online, Inc., 243 F.3d at 821 ("You Have Mail" generic where used to alert user of e-mail arrival).

Finally, the plaintiff claims that the various advertisements, testimonials, invoices, and other exhibits appended to the complaint "support[] its position that the company is known to the general public as 'OrderMyOil'" and confirm that the name OrderMyOil.com is inherently distinctive and has become a source identifier. See Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000) (court may take into account exhibits attached to complaint in evaluating motion to dismiss under Mass. R. Civ. P. 12 [b] [6]). We disagree. The exhibits to the complaint confirm that the "primary significance . . . to the relevant public" of the name OrderMyOil.com is "to identify the nature of [the plaintiff's service]" -- an online service for ordering home heating oil.[14] Colt Defense LLC, 486 F.3d at 705, quoting 15 U.S.C § 1064(3). While the exhibits may also speak to the issue of secondary meaning, discussed supra, they do not support the argument that OrderMyOil.com is a distinctive mark or that distinctiveness was alleged.

---

[14] The customer testimonials, attached as an exhibit to the complaint, describe customer satisfaction with "ordering" and receiving oil from the plaintiff.

OrderMyOil.com is generic as a matter of law.  The
complaint contains no allegations to the contrary, and no amount
of investment in the promotion of OrderMyOil can salvage it from
being a generic way to refer to the act of ordering oil.[15]  See
Miller Brewing Co., 655 F.2d at 8, quoting Abercrombie & Fitch
Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir. 1976) ("No
matter how much money and effort the user of a generic term has
poured into promoting the sale of its merchandise and what
success it has achieved in securing public identification, it
cannot deprive competing manufacturers of the product of the
right to call an article by its name").  In short,
OrderMyoil.com is a generic term for online oil ordering, and
the plaintiff did not allege otherwise in its complaint.
Accordingly, the judge properly allowed the motion to dismiss.[16]

_____

[15] Adding ".com" to the name OrderMyOil does not transform
it into a protectable mark.  See In re Hotels.com, L.P., 573
F.3d 1300, 1304 (Fed. Cir. 2009) ("generic term 'hotels' did not
lose its generic character by placement in the domain name
HOTELS.COM"); In re Oppedahl & Larson LLP, 373 F.3d 1171, 1173
(Fed. Cir. 2004) (noting Patent and Trademark Office's finding
that .com is "top level domain indicator [TLD] without any
trademark significance").

[16] Where the plaintiff's claims under G. L. c. 110H, § 13
(trademark dilution) and G. L. c. 93A (unfair trade practices)
proceeded under the same theory and alleged conduct as the claim
of trademark infringement, they were likewise properly dismissed
under rule 12 (b) (6).  See Pignons S.A. de Mecanique de
Precision v. Polaroid Corp., 657 F.2d 482, 493-494 (1st Cir.
1981) ("To sustain an action under [the Massachusetts
antidilution statute], a plaintiff must show that its mark is
distinctive"); S.S. Kresge Co. v. United Factory Outlet, Inc.,

Judgment affirmed.

---

598 F.2d 694, 697 (1st Cir. 1979) ("In applying [the Massachusetts antidilution statute then codified at G. L. c. 110B, § 12], the courts have been reluctant to grant exclusive rights . . . to all but the 'strongest' trade names"); PPG Indus. v. Clinical Data, Inc., 620 F. Supp. 604, 606 (D. Mass. 1985) (dilution claim requires showing that mark in question is distinctive, i.e., not generic).  See also Black Dog Tavern Co., 823 F. Supp. at 59-60 (granting summary judgment to defendant on plaintiff's c. 93A claim after "conclud[ing] that defendant was fully within his rights in parodying plaintiff's marks").