**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

YELLOW CAB COMPANY OF
SACRAMENTO, a California
corporation,
             *Plaintiff-Appellant,*

v.

YELLOW CAB OF ELK GROVE, INC.,
a California corporation; MICHAEL
P. STEINER, an individual,
             *Defendants-Appellees.*

No. 03-16218

D.C. No.
CV-02-00704-FCD

OPINION

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, District Judge, Presiding

Argued and Submitted
November 4, 2004—San Francisco, California

Filed August 9, 2005

Before: Betty B. Fletcher, Sidney R. Thomas, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Thomas

**COUNSEL**

Andrea M. Miller, Benjamin D. Kinne, Nageley, Meredith & Miller, Inc., Sacramento, California, for the plaintiff-appellant.

Jeffrey S. Kravitz, Kravitz Law Office, Sacramento, California, for the defendants-appellees.

**OPINION**

THOMAS, Circuit Judge:

In this Lanham Act case, plaintiff-appellant Yellow Cab of Sacramento appeals from the district court's grant of summary judgment in favor of defendant-appellee Yellow Cab of Elk Grove. We conclude that there are issues of material fact as to (1) whether the mark "Yellow Cab" has become generic through widespread use in the marketplace, and (2) if descriptive, whether the mark has acquired secondary meaning. We therefore reverse the judgment of the district court. We also determine that the burden of proof as to validity and protectability of an unregistered mark lies with the party claiming trademark protection.

I

Perhaps the Yellow Cab Company of Sacramento didn't know what it had until it was gone.[1] It had operated in the

---

[1]*See* JONI MITCHELL, BIG YELLOW TAXI (Siquomb Publishing Corp. 1970).

Sacramento area, including the suburb of Elk Grove, since 1922. At the time this suit was filed, it operated approximately 90 cabs, had approximately 700 business accounts, and was the only authorized taxicab provider to the Red Lion Hotel, Doubletree Hotel, Radisson Hotel, Holiday Inn Capital Plaza, Marriott Hotel Rancho Cordova, and the Amtrak Depot in the Sacramento area. In the fall of 2001, a cloud appeared over the Sacramento yellow cab empire when Michael Steiner started a one-cab taxi operation in Elk Grove and operated it under the name of "Yellow Cab of Elk Grove." Determined to "catch that yellow cab,"[2] Yellow Cab of Sacramento filed this action against Yellow Cab of Elk Grove, alleging trademark violation under the Lanham Act and related state law claims for unfair competition, false advertising, and intentional interference with prospective business advantage. The district court granted Yellow Cab of Elk Grove's motion for summary judgment, holding that "yellow cab" is a generic term, and, alternatively, that even if "yellow cab" is a descriptive term, Yellow Cab of Sacramento failed to show secondary meaning and is therefore not entitled to trademark protection. Yellow Cab of Sacramento timely appealed. We review a district court's grant of summary judgment in a trademark infringement claim de novo, with all reasonable inferences drawn in favor of the non-moving party. *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

## II

There are five categories of trademarks: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful. *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005). "The latter three categories are deemed inherently distinctive and are automatically entitled to protection because they naturally 'serve[ ] to identify a particular source of a product . . . .' " *Id.* (quoting *Two Pesos, Inc.*

---

[2]CHUCK BERRY, NADINE (Chess 1964).

*v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). Descriptive marks "define a particular characteristic of the product in a way that does not require any exercise of the imagination." *Surfvivor Media, Inc. v. Survivor Productions*, 406 F.3d 625, 632 (9th Cir. 2005). A descriptive mark can receive trademark protection if it has acquired distinctiveness by establishing "secondary meaning" in the marketplace. *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999). "Generic marks give the general name of the product; they embrace an entire class of products." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998). "Generic marks are not capable of receiving protection because they identify the product, rather than the product's source." *KP Permanent Make-Up*, 408 F.3d at 602.

In the present case, Yellow Cab of Sacramento seeks trademark protection for the term "yellow cab," which is not a federally registered trademark, and Yellow Cab of Elk Grove asserts that the term "yellow cab" is either generic or descriptive without acquired secondary meaning, and therefore not entitled to trademark protection.

## A

**[1]** Under the circumstances presented by this case, the district court correctly allocated the burden of proof to Yellow Cab of Sacramento to establish that the mark was not generic. When a plaintiff pursues a trademark action involving a properly registered mark, that mark is presumed valid, and the burden of proving that the mark is generic rests upon the defendant. *Filipino Yellow Pages,* 198 F.3d at 1146. However, if the disputed term has not been federally registered, and the defendant asserts genericness as a defense, the burden shifts to the plaintiff to show that the mark is nongeneric. *Id.*

Yellow Cab of Sacramento argues that the district court misallocated the burden of proof, claiming that a trademark

challenger must establish that the term was generic prior to the proponent's use before the burden of proof can be shifted to the mark's proponent. We have not recognized such a rule, and it is not supported by trademark theory.

The plaintiff bears the ultimate burden of proof in a trademark infringement action. *Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 783 (9th Cir. 2002). "A necessary concomitant to proving infringement is, of course, having a valid trademark; there can be no infringement of an invalid mark." *Id.* (citing *Yarmuth-Dion, Inc. v. D'ion Furs, Inc.*, 835 F.2d 990, 992 (2nd Cir. 1987)). The validity of the trademark is "a threshold issue" on which the plaintiff bears the burden of proof. *Id.* Federal registration of a mark constitutes *prima facie* evidence of the validity of the mark. 15 U.S.C. § 1057(b). For this reason, a plaintiff alleging infringement of a federally-registered mark is entitled to a presumption that the mark is not generic. *Anti-Monopoly, Inc. v. General Mills Fun Group, Inc.*, 684 F.2d 1316, 1319 (9th Cir. 1982). "In essence, the registration discharges the plaintiff's original common law burden of proving validity in an infringement action." *Tie Tech, Inc.*, 296 F.3d at 783 (citing *Vuitton et Fils S.A. v. J. Young Enters., Inc.*, 644 F.2d 769, 775 (9th Cir. 1981)). The defendant may, of course, overcome the presumption "by a showing by a preponderance of the evidence that the term was or has become generic." *Anti-Monopoly*, 684 F.2d at 1319.

**[2]** However, when a mark is not registered, the presumption of validity does not apply; therefore, the plaintiff is left with the task of satisfying its burden of proof of establishing a valid mark absent application of the presumption. Generic marks lack any distinctive quality, and therefore are not entitled to trademark protection. *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 943 n.6 (9th Cir. 2002) (citing *TCPIP Holding Co. v. Haar Communications, Inc.*, 244 F.3d 88, 93 (2d Cir. 2001)). Therefore, when a defendant raises the defense of genericness in an infringement case involving an

unregistered mark, the plaintiff has the burden of proof to show that the mark is valid and not generic. *Filipino Yellow Pages*, 198 F.3d at 1146. Even a registered mark may become generic and subject to cancellation. "Generic terms are not registrable, and a registered mark may be canceled at any time on the grounds that it has become generic." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985). Competitors may use a term that was once distinctive if it has become generic over time. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 744 (2d Cir. 1998) (citing *Park 'N Fly*, 782 F.2d at 1509). The crucial date for the determination of genericness is the date on which the alleged infringer entered the market with the disputed mark or term. *Id.* Thus, Yellow Cab of Sacramento's argument that the plaintiff should not have to assume the burden of proof until the defendant proves that the term in question was generic prior to the plaintiff's use runs counter to trademark theory, and we must reject it.

**[3]** The Second Circuit has created an exception to the general rule, upon which Yellow Cab of Sacramento also relies, that "where the public is said to have expropriated a term established by a product developer, the burden is on the defendant to prove genericness." *Murphy Door Bed Co. v. Interior Sleep Systems, Inc.*, 874 F.2d 95, 101 (2nd Cir. 1989). However, even if we were to recognize that exception in our Circuit, it would not afford plaintiff relief. The *Murphy Door Bed Co.* exception applies to protect a product innovator — in that case, the originator of the Murphy bed. The term "yellow cab" was not originally coined by Yellow Cab of Sacramento, nor was the concept of the taxi cab. John Hertz developed the "Yellow Cab" name in Chicago in 1915, a decade before the term was associated with a taxicab company in Sacramento. Using an analysis prepared by the University of Chicago, Hertz decided that yellow was the most distinctive color for a fleet of taxicabs. He continued use of the color in his subsequent business, Hertz Rent-A-Car. In contrast, the Yellow Cab of Sacramento's use was derivative.

The narrow Second Circuit exception for product developers does not apply.

**[4]** For these reasons, we agree with the district court that the plaintiff bore the burden of proof of establishing that the name was not generic, subject to the usual rules pertaining to the grant of summary judgments.

B

**[5]** Although the district court properly allocated the burden of proof, it erred in determining that there were no genuine issues of material fact concerning genericness. "Whether a mark is generic is a question of fact." *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 840 (9th Cir. 2001). "To determine whether a term has become generic, we look to whether consumers understand the word to refer only to a particular producer's goods or whether the consumer understands the word to refer to the goods themselves." *KP Permanent Make-Up, Inc.*, 408 F.3d at 604. If buyers understand the term as being identified with "a particular producer's goods or services, it is not generic." *Surgicenters of Am., Inc. v. Medical Dental Surgeries Co.*, 601 F.2d 1011, 1016 (9th Cir. 1979). "But if the word is identified with all such goods or services, regardless of their suppliers, it is generic." *Id.* (citing *King Seeley Thermos Co. v. Aladdin Indus., Inc.*, 321 F.2d 527, 579 (2d Cir. 1963)).

**[6]** We have often determined whether a mark is generic using the "who-are-you/what-are-you" test: "A mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the generic name of the product answers the question 'What are you?'" *Filipino Yellow Pages*, 198 F.3d at 1147 (quoting *Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1391 (9th Cir. 1993) (quoting 1 J. Thomas McCarthy, *Trademarks and Unfair Competition*, § 12.01 (3d ed. 1992))) (alterations omitted).

Analyzing the undisputed evidence, we conducted the "who-are-you/what-are-you" test and held that "Filipino yellow pages" answered the "what are you?" question, and was thus a generic term. *Id.* at 1151. We noted in *Filipino Yellow Pages* that if asked, "What are you?" the three competing companies could all answer "a Filipino yellow pages." *Id.*

**[7]** In the present case, there is a genuine issue of material fact as to the genericness of the term "yellow cab." If one asks "What are you?" to companies called, for example, Checker Cab Co. or City Cab Co., one would expect the response "a taxicab company" or "a cab company." Posing the question: "Could you refer me to a yellow cab company?", one would expect these same companies to point not to themselves, but to a business operating under the name "Yellow Cab." "Yellow cab" thus appears to answer the "who are you?" rather than the "what are you?" question, demonstrating its non-genericness. Because Yellow Cab of Sacramento came forward with evidence demonstrating the existence of a genuine issue of material fact about whether the term "yellow cab" was generic, summary judgment was inappropriate on this issue.

### C

The district court held, in the alternative, that if the term "yellow cab" was not generic, then Yellow Cab of Sacramento had failed to meet its burden to establish secondary meaning. Yellow Cab of Sacramento has put forth evidence raising a genuine issue of material fact on this issue as well.

**[8]** "[T]he question of secondary meaning is one of fact." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1355 (9th Cir. 1985) (en banc). To determine whether a descriptive mark has secondary meaning, a finder of fact considers: "(1) whether actual purchasers of the product bearing the claimed

trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark, and (4) whether use of the claimed trademark has been exclusive." *Levi Strauss*, 778 F.2d at 1358 (quoting *Transgo, Inc. v. AJAC Transmission Parts Corp.*, 768 F.2d 1001, 1015 (9th Cir. 1985)) (alteration omitted).

**[9]** Here, Yellow Cab of Sacramento presented to the district court various declarations detailing the history of the Yellow Cab of Sacramento, customer confusion concerning the companies, advertising data and other evidence addressing the *Levi Strauss* factors. This evidence, when viewed in the light most favorable to Yellow Cab of Sacramento, creates a genuine issue of material fact concerning whether the descriptive mark in this case had acquired secondary meaning. Yellow Cab of Elk Grove relies heavily on *Filipino Yellow Pages*, but the record in this case is far different and far stronger than the record in that case.[3] Therefore, the entry of summary judgment on this question was inappropriate.

---

[3]*Japan Telecom, Inc. v. Japan Telecom Am., Inc.*, 287 F.3d 866 (9th Cir. 2002), is also distinguishable. There, the plaintiff brought a trademark infringement action against the defendant; the district court granted summary judgment for the defendant. *Id.* at 870. We affirmed, holding that although plaintiff's name was descriptive, the plaintiff failed to establish a genuine issue of material fact regarding secondary meaning because the plaintiff presented only a few misdirected mailings which were ambiguous as to secondary meaning, and an affidavit from the plaintiff's president which the district court correctly found lacked foundation. *Id.* at 873-74. As noted above, however, Yellow Cab of Sacramento presented direct evidence (*e.g.*, evidence of customer confusion and advertising data relevant to the *Levi Strauss* factors) sufficient to present a genuine issue of material fact for trial.

III

The district court correctly allocated the burden of proof to the plaintiff. However, because the plaintiff tendered evidence creating genuine issues of material fact, the district court's grant of summary judgment is reversed.[4] Each party shall bear its own costs on appeal.

**REVERSED AND REMANDED.**

---

[4]Because we determine that a genuine issue of material fact exists as to both issues, we need not address appellant's argument that the district court erred in considering evidence pertaining to a national market rather than a local one. On remand, the district court should take into consideration the territorial scope of common law trademark rights in deciding what evidence is relevant to the determination. *See* 4 J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION 26:25-30. However, we must reject the specific argument tendered by the defendant that the use of the term "yellow cab" in the New York City metropolitan area is dispositive in determining the distinctiveness of a mark used by a small business claiming territorial rights in Sacramento, California. Since the 1960's, New York City has required its licensed medallion cabs to be painted yellow. 34 R.C.N.Y. § 4-01(b) (defining "taxi" as "a motor vehicle used for the carriage of passengers for compensation, equipped with a taxi meter, painted yellow, and displaying a current medallion issued by the New York City Taxi and Limousine Commission"). This is to distinguish taxis, which can be hailed from the street, from "for hire vehicles," which must be hired "by prearrangement only." *Id.* It also distinguishes licensed medallion cabs from so-called "gypsy" cabs, which do not operate with government authorization. In short, the unique New York City government regulation of taxicabs is irrelevant to the trademark issues presented by this case, and in particular, deciding the significance of the voluntary use of marks in commerce in different geographic areas.