**CLOSED LOOP MARKETING, INC., a California corporation, Plaintiff,**

v.

**CLOSED LOOP MARKETING, LLC, doing business as Closed Loop Marketing & Advertising, an Idaho Limited Liability Corporation; and Does 1 through 10, inclusive, Defendants.**

**No. CIV. S–08–1500 LKK/DAD.**

United States District Court, E.D. California.

Nov. 13, 2008.

Chad Wesley Carlock, Law Offices of Chad Carlock, Davis, CA, for Plaintiff.

James J. Holmes, Sedgwick Detert Moran & Arnold LLP, Los Angeles, CA, Matthew Augustus Fischer, Sedgwick, Deter, Moran & Arnold, LLP, San Francisco, CA, for Defendants.

*ORDER*

LAWRENCE K. KARLTON, Senior District Judge.

Plaintiff and defendant are both companies engaged in the business of, inter alia, internet marketing consulting and advertising consulting. At the time this action was filed, plaintiff and defendant both operated under the name "Closed Loop Marketing," although defendant argues that it has since adopted the name "CLM." Plaintiff brings this action alleging that it has a protectable interest in the trade name Closed Loop Marketing, and that defen-

dant has infringed upon this interest and diluted the name.

Before the court are two motions: plaintiff's motion for a preliminary injunction and defendant's motion to dismiss. Both motions call upon the court to determine essentially the same issues. For the reasons stated below, defendant's motion to dismiss is granted. Plaintiff's motion for a preliminary injunction is therefore denied.

## I. FACTS

### A) Evidentiary Issues

This case has not progressed beyond the filing of pre-answer motions, yet the parties have already submitted well over three hundred pages of exhibits and declarations. Many of these submissions are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," and for these submissions, the court must grant parties' requests for judicial notice. Fed. R. Ev. 201(b)(2), (d). The court disregards defendants' exhibits to the extent that they contain matters for which the court is not required to grant the request for judicial notice.

The court may consider judicially noticed evidence in evaluating a rule 12(b)(6) motion to dismiss without transforming the motion into a motion for summary judgment. *Tellabs v. Makor Issues and Rights,* 551 U.S. 308, 127 S.Ct. 2499, 2509, 168 L.Ed.2d 179 (2007) (citing 5B Wright & Miller § 1357 (3d ed. 2004 and Supp. 2007)), *United States v. 14.02 Acres of Land More or Less in Fresno County,* 530 F.3d 883, 894 (9th Cir.2008) (quoting *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001)).

Because the court resolves this case on the motion to dismiss, this evidence is construed in the light most favorable to the plaintiff, and plaintiff's non-conclusory factual allegations are taken as true.

### B) Factual Background

■ The phrase "closed loop marketing" is widely used in online marketing, as evidenced by advertisements, job announcements, etc. Indeed such use was made up to four years prior to plaintiff's adoption of the name.[1] (Pl.'s Opp'n Mot. Dismiss 7:20–24, Def.'s Mem. Supp. Mot. Dismiss 6:23–28, Def.'s Request for Judicial Notice (hereinafter RFJN) Supp. Mot. Dismiss Ex. F.) As is perhaps typical of phrases popular in the marketing and internet industries, the precise meaning of "closed loop marketing" is unclear and neither party has provided the court with a precise definition. Nonetheless, the parties appear to agree that the phrase refers to a particular marketing process.

Plaintiff began to use the name "Closed Loop Marketing" in May, 2001. (Compl. ¶ 6.) Plaintiff alleges that it has used the names Closed Loop Marketing, Closed Loop, and CLM since that time. Plaintiff is a California Corporation, with a principal place of business in Placer County, California. Plaintiff began operations as an LLC, but was converted to a corporation effective January 1, 2005.

Plaintiff attempted to register "Closed Loop Marketing" as a federal service mark on November 24, 2003. In each of three separate filings, the examiner determined that the mark was not protectable, because it was "merely descriptive" and/or "generic." (RFJN Opp'n Prelim. Inj. Ex. 49, Ex.

---

**1.** Judicial notice is appropriate with respect to the fact that the phrase appears in particular announcements, advertisements, and press pieces, and the dates when the materials were published. Plaintiff does not dispute these elements. The court does not consider these materials' representations, if any, as to the meaning or meanings of the phrase, or their representations regarding further use of the phrase.

50, Ex. 52 (office actions of 6/16/04, 1/31/06, and 7/24/06).) Thus, the service mark "Closed Loop Marketing" is not registered, and the United States Patent and Trademark Office determined that it could not be registered.

Plaintiff alleges that the trade name Closed Loop Marketing has nonetheless "acquired secondary meaning as being associated with plaintiff and its services." Plaintiff further alleges that it has developed and maintains substantial goodwill associated with the name. In the terms used by the caselaw, plaintiff alleges that the name is either suggestive or descriptive.

Defendant is an Idaho LLC, formed in September 2003 under the name "Closed Loop Marketing, LLC." (Compl. ¶ 7.) In January 2006, defendant adopted the name "Closed Loop Marketing and Advertising." (*Id.*) Defendant asserts that it is in the process of changing its name from "Closed Loop Marketing, LLC" to "CLM, LLC." As evidence of the change, defendant has submitted exhibits indicating that on May 22, 2008, defendant filed articles of organization for CLM, LLC; that on July 31, 2008, an Idaho State Tax Commission Income Tax Withholding Account Number was issued to CLM, LLC; and that defendant's website now redirects to a new address featuring the new name and logo.[2] Plaintiff argues, however, that the change is not yet complete, because defendant has created a *new* entity named "CLM, LLC," and "Closed Loop Marketing, LLC" has not been dissolved. (Pl.'s Opp'n to Mot. Dismiss, 13:8–9.)

Plaintiff alleges that plaintiff and defendant are engaged in the same lines of business, and that defendant chose its name despite actual knowledge of plaintiff's name and of actual customer confusion.

Actual customer confusion regarding the two businesses has allegedly occurred when, inter alia, employees of HP (a customer of both parties) asked whether the parties were related (Compl. ¶ 13(b)); when HP twice mailed checks in payment for services to the wrong company (Compl. ¶¶ 13(h), (j)); and when the organizers of a conference mistakenly created nametags for attending employees of the two parties which identified all attendees as employees of plaintiff (Compl. ¶ 13(c)). More generally, plaintiff alleges that an ordinary person would believe that the two parties were branches, subsidiaries, or offices of a single entity. (Compl. ¶ 12.) Plaintiff alleges that as a result of this confusion, it has lost customers. (Compl. ¶ 26.)

## II. STANDARD

In order to survive a motion to dismiss for failure to state a claim, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." *Id.* at 1964–65.

The Supreme Court recently held that Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief. *Id.* at 1965 n. 3. Though such assertions may provide a defendant with the requisite "fair notice" of the nature of a plaintiff's claim, the Court opined that only factual allegations can clarify the "grounds" on

**2.** The court takes judicial notice of defendants' filings related to the name change (as public records), and of the fact that the website does now redirect to another page.

which that claim rests. *Id.* "The pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 1965, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1216, pp. 235–36 (3d ed. 2004).[3]

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto,* 405 U.S. 319, 322, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Int'l Ass'n v. Schermerhorn,* 373 U.S. 746, 753 n. 6, 83 S.Ct. 1461, 10 L.Ed.2d 678 (1963). In general, the complaint is construed favorably to the pleader. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Nevertheless, the court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *W. Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).

## III. ANALYSIS

### A. Mootness

■ Defendant argues that it has changed its name from Closed Loop Marketing to CLM, and that this renders plaintiff's claim moot. Mootness is, at least in part, a constitutional limit on jurisdiction, in that it "derives from the requirement of Art. III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy." *DeFunis v. Odegaard,* 416 U.S. 312, 316, 94 S.Ct. 1704, 40 L.Ed.2d

164 (U.S.1974) (internal quotations omitted). Because mootness potentially goes to the question of whether this court has jurisdiction over the case, the court must begin with this argument.

Plaintiff complains of the use of " 'Closed Loop Marketing' or any derivative name, including but not limited to CLM." (Compl. ¶ 17.) This fact alone is enough to defeat defendant's mootness argument. There is clearly an active dispute between the parties as to whether the name CLM infringes on any rights held by the plaintiff, and this court has the power to remedy plaintiff's injury, if any, by enjoining defendant from using a name it otherwise intends to use. Therefore, plaintiff's claims are not moot.

### B. The Lanham Act Claim

Plaintiff's Lanham Act claim is the center of the court's inquiry, because the parties agree that plaintiff's state-law unfair competition and unjust enrichment claims are entirely derivative of this claim. The court concludes that even when the allegations and evidence are construed most favorably to the plaintiff, plaintiff cannot succeed on this claim.

■ A claim under section 43(a) of the Lanham Act requires two elements: 1) a valid, protectable proprietary interest in the trade name, and 2) that defendant's use of the name creates a "likelihood of confusion" in the general public. *New West Corp. v. NYM Co. of California, Inc.,* 595 F.2d 1194, 1198–1202 (9th Cir.1979), 15 U.S.C. § 1125(a).

---

**3.** The holding in *Twombly* explicitly abrogates the well established holding in *Conley v. Gibson* that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Twombly,* 127 S.Ct. at 1968.

### 1. Whether Plaintiff Has A Protectable Interest In The Name

■ Courts have distinguished five categories of names, each of which is entitled to a different degree of protection. The categories are, from least to most protected, "(1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; and (5) fanciful." *Yellow Cab Co. v. Yellow Cab of Elk Grove, Inc.*, 419 F.3d 925, 927 (9th Cir.2005) (citing *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir.2005)). In this case, plaintiff argues that the name is either suggestive or that it is descriptive but with a secondary meaning, either of which would entitle plaintiff to protection. Defendant argues that the name is generic, or that it is descriptive and without a secondary meaning, and therefore not entitled to protection.[4]

■ Before addressing the substance of this question, the court addresses three preliminaries. The first is that this question—which category a name fits into—is at least in part a question of fact. *Yellow Cab. Co.*, 419 F.3d at 929 (quoting *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 840 (9th Cir.2001)) ("[W]hether a mark is generic is a question of fact."). Plaintiff argues that this court is therefore unable to resolve this question against plaintiff on a motion to dismiss. However, the requirement that the court accept all plaintiff's factual allegations as true, and construe the available evidence in the light most favorable to plaintiff, does not compel the court to accept plaintiff's conclusory allegations as to which category the name "closed loop marketing" fits into. Instead, the court asks whether the plaintiff's allegations or the judicially noticed facts are sufficient to resolve this question. The second preliminary is to note that for

purposes of a claim under section 43(a), trade names, trade marks, and service marks are treated similarly. These terms' meanings differ, but the protection of each rests "upon the same fundamental principles." *American Steel Foundries v. Robertson*, 269 U.S. 372, 380, 46 S.Ct. 160, 70 L.Ed. 317 (1926). Therefore, they receive the same protection under section 43(a). *Accuride International, Inc. v. Accuride Corp.*, 871 F.2d 1531, 1534–35 (9th Cir. 1989). *See also* 1 Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* §§ 4:14, 9:1–4 (4th ed. 2008). Accordingly, this court does not distinguish among trade names, trade marks and service marks in evaluating plaintiff's claim.

■ The final preliminary is to determine the effect of the United States Patent and Trademark Office (PTO) determination. This court is not the first institution to evaluate the protectability of "closed loop marketing." The PTO determined that the name was not protectable when it rejected plaintiff's application to register it as a service mark. This rejection has two consequences for this case. First, plaintiff is not entitled to a presumption that the service mark (now argued to be a trade name) is protectable, and second, the PTO's evaluation may serve as a persuasive authority indicating that the mark is not protectable. *See, e.g., Schwan's IP, LLC v. Kraft Pizza Company*, 379 F.Supp.2d 1016, 1021 (D.Minn.2005).

Plaintiff argues that the PTO determination does not indicate ineligibility for protection, because unregistered marks and names may be protectable. *Chronicle Publishing Co. v. Chronicle Publications, Inc.*, 733 F.Supp. 1371, 1375 (N.D.Cal. 1989), *Tonawanda Street Corp. v. Fay's*

---

4. Because the name is not registered, at trial, plaintiff would bear the burden of showing that the name is protectable. *Yellow Cab*, 419 F.3d at 928. However, on a motion to dismiss, this burden is on the defendant.

*Drug Co.,* 842 F.2d 643, 647 (2d Cir.1988). Contrary to plaintiff's assertions, however, the cited cases considered marks that were unregistered, rather than unregisterable. In those cases, there had been no attempt to register the mark. Here, in contrast, plaintiff applied to register the mark/name, only to have that application rejected. In rejecting plaintiff's application, the PTO answered the same question facing this court, whether the name is protectable.

Nonetheless, the court does not rely on the PTO's conclusions in determining either the appropriate categorization of the name or the broader question of protectability. It appears to the court that the PTO did not make a determination as to whether the name was generic or descriptive; the PTO referred to the term as both "merely descriptive of the identified services" and as "generic as applied to the services." (Def.'s RFJN Opp'n Prelim. Inj. Ex. 49, 1.) The PTO must have determined that if the name was descriptive, it lacked secondary meaning, and was therefore unprotectable. However, plaintiff now sufficiently alleges secondary meaning that would render a descriptive mark protectable.

### i. Suggestive Names

 A suggestive name is one that "suggests rather than describes an ingredient, quality, or characteristic requiring imagination, thought, and perception to determine the nature of the [services]." *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.,* 718 F.2d 327, 329 (9th Cir.1983), *rev'd on other grounds,* 469 U.S. 189, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985), *see also AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 349 (9th Cir.1979). Suggestive names are always entitled to protection. *Id.* Plaintiff argues that the term "closed loop marketing" is suggestive because "a degree of industry knowledge and insight as to the meaning of the term is required in order to connect the name to the services provid-

ed by Plaintiff." (Pl.'s Mem. Supp. Mot. Prelim. Inj. at 6:2–4.)

This argument misses the point. The question is what thought process the consuming, rather than general, public must engage in. *Surgicenters of America v. Medical Dental Surgeries,* 601 F.2d 1011, 1017 (9th Cir.1979) (holding that the "consuming public," which consisted of doctors and their patients, considered the mark "surgicenter" to be generic). Although a member of the general public might not be able to connect the name with the nature of the service without the exercise of imagination, plaintiff has not alleged that the consuming public (businesses purchasing internet marketing services) must do so. Under the circumstances, it is appropriate to conclude that the name "closed loop marketing" is not suggestive.

### ii. Generic and Descriptive Names

 Because it is not suggestive, "Closed Loop Marketing" must fall into either the "generic" or "descriptive" categories. The distinction between the two carries significant consequences: descriptive marks are entitled to protection *if* the mark has acquired a secondary meaning, whereas generic marks are not entitled to any protection, regardless of secondary meaning or consumer confusion.

The Ninth Circuit has provided several articulations of this distinction. In *Official Airline Guides v. Goss,* the court stated that if a term identifies "the genus of which the particular product is a species" then it is generic, but if it "describes the qualities or characteristics of a good or service" then it is descriptive. 6 F.3d 1385, 1398 (9th Cir.1993) (quoting *Park 'N Fly,* 469 U.S. at 194, 105 S.Ct. 658). In *Kendall–Jackson Winery v. E. & J. Gallo Winery,* the court held that a generic term "simply state[s] what the product is." 150 F.3d 1042, 1047 n. 8 (9th Cir.1998). *Kendall–Jackson* illustrated this test by citing

with approval cases that had concluded that, *inter alia*, "Wickerware" was a generic term for wicker furniture and accessories, but that "Honey Baked Ham" was a descriptive, rather than generic, term for ham that has been baked in honey. *Id.*

■ One way to draw this distinction is the "who are you/what are you" test. "A [protectable] mark answers the buyer's questions 'Who are you?' 'Where do you come from?' 'Who vouches for you?' But the generic name of the product answers the question 'What are you?' " *Yellow Cab Co.*, 419 F.3d at 929–30 (citing *Filipino Yellow Pages, Inc. v. Asian Journal Publs., Inc.*, 198 F.3d 1143, 1147 (9th Cir. 1999) (quoting *Official Airline Guides*, 6 F.3d at 1391)). Applying this test, the Ninth Circuit concluded that the name " 'Filipino yellow pages' answered the 'what are you?' question, and was thus a generic term. . . . [I]f asked, 'What are you?' [ ] three competing companies could all answer 'a Filipino yellow pages.' " [5] *Id.* (internal citations omitted). Conversely, the term "yellow cab" is non-generic, because

> If one asks "What are you?" to companies called, for example, Checker Cab Co. or City Cab Co., one would expect the response "a taxicab company" or "a cab company." Posing the question: "Could you refer me to a yellow cab company?", one would expect these same companies to point not to themselves, but to a business operating under the name "Yellow Cab."

*Id.*

Applying this test, the court concludes that "Closed Loop Marketing" answers the question "what are you," and is therefore a generic term. Defendant's judicially noticed exhibits identify at least six nonparty companies that have actually answered the question "could you refer me to a closed loop marketing company?" by pointing to themselves, with websites advertising that they offer closed loop marketing services. Plaintiff does not dispute that these companies do claim to offer such services or so advertise.[6]

Plaintiff's allegations, do not address or refute this conclusion. All of plaintiff's purported counterarguments merely argue that the name has acquired "secondary meaning" of referring to plaintiff. For example, plaintiff points to the complaint's allegation that the trade name "Closed Loop Marketing" has become associated in the minds of internet advertisers and search engine marketing professionals with plaintiff's company. (Compl. ¶ 10.) For purposes of this motion, the court must accept this allegation as true. However, allegations establishing a secondary meaning do not indicate that the term is not generic. The question is whether the original meaning of the name identifies a thing's (or service's) genus or merely its qualities. Plaintiff does not provide allegations or arguments that speak directly

---

**5.** *Yellow Cab Co.* stated that " 'Filipino yellow pages' answered the 'what are you?' question, and was thus a generic term." 419 F.3d at 929. However, in *Filipino Yellow Pages*, the Ninth Circuit avoided definitively answering whether the mark "Filipino Yellow Pages" was generic, instead holding that it unprotectable because it was either generic or "the feeblest of descriptive marks" and without a secondary meaning. 198 F.3d at 1151–52.

**6.** Similarly, "Significant use of a term by competitors in the industry has traditionally been recognized . . . as indicating genericness." *Mil–Mar Shoe Co. v. Shonac Corp.*, 75 F.3d 1153, 1159 (7th Cir.1996) (citing *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 80 (7th Cir.1977), 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 12.02[7][b] (3d ed. 1995)).

to this question, and thus secondary meaning is beside the point.

### iii. Secondary Meaning Cannot Render A Generic Name Protectable

██ Once it has been established that a name is generic, that name is ineligible for protection regardless of any evidence of a secondary meaning. *Two Pesos v. Taco Cabana,* 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (U.S.1992) ("generic marks ... are not registerable as trademarks."), *Park 'N Fly,* 718 F.2d at 329 ("A generic mark cannot become a registrable trademark under any circumstances."). This is because "to allow a producer of goods to usurp a generic term as a protectable trademark would prevent competitors from describing their own goods adequately." *Mil–Mar Shoe Co. v. Shonac Corp.,* 75 F.3d 1153, 1157 (7th Cir.1996) (quoting *Technical Pub. Co., Div. of Dun–Donnelley Pub. Corp. v. Lebhar–Friedman, Inc.,* 729 F.2d 1136, 1139 (7th Cir.1984)).

Therefore, the court concludes that the term "closed loop marketing" is not protectable.

### 2. Likelihood of Confusion

Because the court concludes that plaintiff does not have a protectable interest in the name, plaintiff's Lanham Act claim fails. *New West Corp.,* 595 F.2d at 1198 (plaintiff must have "a reasonable interest to be protected."). Therefore, the court does not reach the second prong of a claim under section 43(a) of the Lanham Act, the likelihood of confusion: confusion resulting from multiple parties' use of a generic name cannot support such a claim.

### C. State Law Claims

Plaintiff and defendant agree that the state law claims are derivative of the Lanham act claim. Plaintiff's Unfair Competition claim, brought under California Business and Professions Code section 17200, requires plaintiff to allege that defendant's conduct was unlawful or unfair. Plaintiff attempts to satisfy this burden by relying on the claimed violations of the Lanham Act, and the court rejects this claim. Similarly, plaintiff's unjust enrichment claim seeks to recover the benefit derived from "unlawful actions," and thereby depends on the Lanham Act and Unfair Competition claims to establish that defendant's actions were in fact unlawful. Therefore, plaintiff's state law claims are dismissed.

## IV. CONCLUSION

For the reasons stated above, defendant's motion to dismiss is GRANTED, and plaintiff's motion for a preliminary injunction is DENIED. The Clerk of the Court is directed to CLOSE this case.

IT IS SO ORDERED.

### JUDGMENT IN A CIVIL CASE

**Decision by the Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

**IT IS ORDERED AND ADJUDGED.**

**THAT JUDGMENT IS HEREBY ENTERED IN ACCORDANCE WITH THE COURT'S ORDER OF 11/13/08.**